Evelyn **ELLIOTT** and Benito Molina, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Caspar **WEINBERGER**, Individually and in his capacity as Secretary, United States Department of Health, Education and Welfare; and Sung Dai Seu, Individually and in his capacity as Pacific Area Manager, Social Security Administration, Department of Health, Education and Welfare, Defendants.

Civ. No. 72–3629.

United States District Court, D. Hawaii.

Feb. 4, 1974.

Stanley E. Levin, Legal Aid Society of Hawaii, Comprehensive Legal Services, Waianae, Hawaii, Peter A. Lee, Hawaii Legal Services Project, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiffs.

Harold M. Fong, U. S. Atty., Honolulu, Hawaii, Irving Jaffe, Acting Asst. Atty. Gen., Harland F. Leathers, Bruce E. Titus, Civil Div., Dept. of Justice, for defendants; Frank L. Dell'Acqua, Chief of Litigation, Henry Eigles, Atty., Social Security Administration, Dept. of Health, Education, and Welfare, of counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SAMUEL P. KING, District Judge.

Under 42 U.S.C. § 404(a) and (b),[1] the Secretary of the Social Security Administration (hereinafter the "Administration") may effect or waive recoupment of overpayments made to social security recipients. The Administration has promulgated procedures and regulations governing recoupment and waiver in its Claims Manual § 5503[2] and in the

---

1. § 404. Overpayments and underpayments

(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

(1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall apply any combination of the foregoing. A payment made under this subchapter on the basis of an erroneous report of death by the Department of Defense of an individual in the line of duty while he is a member of the uniformed services (as defined in section 410(m) of this title) on active duty (as defined in section 410(*l*) of this title) shall not be considered an incorrect payment for any month prior to the month such Department notifies the Secretary that such individual is alive.

(2) With respect to payment to a person of less than the correct amount, the Secretary shall make payment of the balance of the amount due such underpaid person, or, if such person dies before payments are completed or before negotiating one or more checks representing correct payments, disposition of the amount due shall be made in accordance with subsection (d) of this section.

(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

2. The Claims Manual § 5503(a) provides that standard form letters sent to recipients subject to recoupment contain:

(1) The incorrect payment made and how and when it occurred.

(2) The right to request reconsideration of the overpayment determination.

(3) The required recovery.

(4) The proposed adjustment or the demand for repayment where adjustment is not possible.

(5) The waiver provisions of the law (Social Security Act, secs. 204(b) or 1870(c)).

(6) The availability of partial adjustment or partial refund.

(7) The need to notify the DO [Department Office] promptly if the person feels that the circumstances in the case would justify reconsideration, waiver, partial adjustment, or partial refund.

§ 5503(b) provides:

Delay in Withholding Benefits to Recover Overpayments.

Before we start to adjust the overpayment against the benefits due a beneficiary, he or his payee will normally be given reasonable opportunity to contest the correctness of the determination or to establish that a basis exists for waiver or partial adjustment. The notice to the beneficiary will advise him that adjustment will be deferred for a longer period when the facts in a given case, including but not limited to time case is being worked, cutoff dates, mailing time, etc., indicate that a 30-day period would be inad-

Code of Federal Regulations, 20 C.F.R. § 404.901 et seq. (1973).[3] The Plaintiffs in this class action claim that these procedures and regulations deny them due process of law under the Fifth Amendment because their benefits are reduced or suspended without adequate notice of the reasons for the recoupment, without adequate notice of their right to reconsideration, waiver, or partial adjustment,[4] and without a hearing prior to the recoupment. Defendants contest the Plaintiffs' constitutional and jurisdictional claims.

*Facts:*

This court has divided the Plaintiff class into two subclasses. Represented by Plaintiffs Silva, Ortiz, and Vaquilar, the first subclass consists of all social security old-age beneficiaries, resident in the State of Hawaii, whose exposure to recoupment is based upon their own annual earnings reports.[5] Represented by Plaintiffs Elliott, Gaines, and Yamasaki, the second subclass consists of all social security old-age and disability benefit recipients, resident in the State of Hawaii, whose exposure to recoupment is based upon evidence other than annual earnings reports.[6]

 Named Plaintiffs of subclass one all received an Administration form letter indicating that based upon their annual earnings reports for the preceding year, a specified overpayment had

---

equate for consideration of the matter and reply by the beneficiary and reviewing office processing time.

The only exceptions to this rule are:

(1) the overpayment is based on an annual report by the beneficiary; or

(2) the overpayment results from the superendorsement procedures under Section 205(n) of the Act whereby payment of a combined check is made to the survivor. . . . In the above two situations immediate adjustment action is taken.

§ 5503(c) provides:

If the person responds raising some question about the correctness of the determination of overpayment, or raises a question about recovery, waiver or partial adjustment, the DO will obtain the necessary evidence and prepare a recommendation to the reviewing office for disposing of the case. *Thus, if the person liable requests reconsideration of the substantive determination and it appears that the determination will be affirmed, the DO will develop the possibility of waiver of adjustment or recovery of the overpayment at the same time it receives evidence to resolve the request for reconsideration. This is necessary since, if the substantive determination is affirmed the Reconsideration Determination will cover both issues* (§ 8737). (Emphasis original).

When development is initiated for reconsideration of the overpayment determination, for waiver, or for partial adjustment, withholding to recoup the overpayment will be further deferred and payment will be continued until development has been completed, if the beneficiary is otherwise entitled to benefits. If development will not be completed before the expiration of the initial 30-day deferral period, the DO

will . . . advise the reviewing office.

After this case was heard, the Administration reported that by January 1, 1975, overpayments based on beneficiaries' annual reports [§ 5503(b)(1)] will not be an exception to the rule of § 5505(b).

3. § 404.901 et seq. of Social Security Administration Regulations No. 4, set forth a four-step administrative review including an initial determination (§ 404.905); a reconsidered determination (§ 404.914); an administrative hearing *de novo* before an independent administrative law judge (§ 404.-917); review by the Appeals Council of the Social Security Administration (§ 404.945). After exhaustion of these administrative remedies, 42 U.S.C. § 405(g) provides for judicial review.

The initial overpayment determination notice must state the basis of the determination and inform the recipient of his right to reconsideration (§ 404.907). The initial determination is final unless a written request for reconsideration is filed (§ 404.908). The reconsideration decision is final unless a hearing is requested in writing (§ 404.914).

4. Partial adjustment is a recoupment method whereby part of monthly benefits are withheld. It is permitted (not mandated) by 20 C.F.R. § 404.502(a) if certain conditions are met.

5. Recipients of old age retirement benefits are required to file annual earnings reports; and under 42 U.S.C. § 403(b) and (f), their monthly benefits may be reduced if their reported annual earnings are in excess of specified levels. Disability recipients are not required to file annual earnings reports.

6. The exposure of Plaintiffs Elliott and Gaines to recoupment is based upon the Administration's discovery of its own alleged

occurred and that their subsequent benefit payments would be reduced or totally suspended over a specified period. There was some notice of the right to reconsideration and waiver.[7] Plaintiffs believed themselves to be not liable for any overpayment, not at fault in causing the overpayment, and unable to repay the amount due; they personally contacted local Social Security Administration offices within thirty days of receipt of the form letter. At that time, none were advised that appropriate forms requesting waiver, reconsideration, and partial adjustment were available to initiate administrative action, and none actually filed the requisite forms within thirty days.[8] Currently, the Adminis-

tration has completed recoupment against two of these Plaintiffs while deferring recoupment against the other pending the disposition of this case. Plaintiffs of subclass one have done all that reasonably could be expected of them to exhaust their administrative remedies.[9]

Named Plaintiffs of subclass two received overpayment notices more than thirty days before recoupment was to begin. The notice to Plaintiff Elliott set forth that the overpayment determination was based upon her receipt of both retirement and disability benefits when she was entitled to only disability benefits.[10] The notice to Plaintiff Gaines indicated that "duplicate pay-

---

error. Plaintiff Yamasaki's exposure is based upon information supplied to the Administration by the insurance carrier of her unemployment compensation insurance.

7. The pertinent parts of the form letter are as follows:

"If you believe that this determination is not correct, you may request that your case be reexamined. If you want the reconsideration, you must request it not later than 6 months from the date of this notice. You may make any such request through any social security office. If additional evidence is available, you should submit it with your request.

To recover the overpayment, we shall withhold your benefits beginning with the check you would normally receive in _____. The next check that you will receive after the full overpayment has been withheld will be for $_____. It will be sent to you about _____. Thereafter, your regular monthly benefits of $_____ will be resumed.

Under social security law, any overpayment must be withheld from benefits or paid back unless *both* of the following are true:
1. The overpayment wasn't your fault in any way and you cashed the check(s) because you thought they were correct, *and*
2. You couldn't meet your necessary living expenses if you had to pay back the overpayment or have it withheld from your social security benefits; or it would be unfair for some other reason.

To decide whether repayment would cause you financial hardship, we shall need a statement of your assets, and monthly income, and expenses. If you think you meet both conditions, call, write, or visit any social security office within 30 days

from the receipt of this letter. Please take this letter with you if you visit the office. Unless we hear from you within 30 days, we shall withhold benefits as indicated above."

8. One Plaintiff (Vaquilar) did immediately ask for and receive a partial adjustment of the amount to be withheld monthly. Moreover, acting on advice of counsel, he completed and filed the requisite forms requesting waiver and reconsideration more than thirty days after receipt of the overpayment notice. However, trial testimony indicates that timely completion of the forms would not have changed the Administration's disposition of the first subclass cases.

9. The general rule is that a litigant must exhaust his administrative remedies, if such remedies exist, before invoking federal jurisdiction. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). However, the exhaustion requirement is excused if a) the administrative remedy is wholly inadequate, and the federal question is plain, or b) exhaustion would cause irreparable harm, as by prejudicial delay. See Martinez v. Richardson, 472 F.2d 1121, 1125 (10th Cir. 1973) and authorities cited therein. See also Note, Federal Jurisdiction Over Challenges To State Welfare Programs, 72 Col.L.Rev. 1404, 1438–40 (1972). In this case, exhaustion of administrative remedies is excused on either of the above grounds. The federal question is clear; obtaining administrative relief on the due process issues raised would be a lengthy process during which many of the aged and disabled Plaintiffs in both subclasses would suffer and some would die.

10. Affidavit of Bernard Popick, para. 12.

ments" over specified dates was the reason for the overpayment finding.[11] The notice to Plaintiff Yamasaki specified "a processing error" as the cause of the overpayment.[12] All three named Plaintiffs received some notice of the right to reconsideration and waiver.[13] The Plaintiffs believed themselves to be not liable for any overpayment, not at fault in causing the overpayment, and unable to repay the amount claimed; they contacted local Administration offices within thirty days after receipt of the overpayment notice. At that time, none were advised that appropriate forms requesting waiver, reconsideration, and partial adjustment were available to instigate administrative action, and none actually filed the requisite forms within thirty days.[14] Presently, recoupment against Elliott and Gaines has been deferred pending a final disposition of this case, while recoupment against Plaintiff Yamasaki has been completed. Plaintiffs of subclass two have done all that reasonably could be expected of them to exhaust their administrative remedies.

In summary, the Administration's regulations and procedures, and the Plaintiffs' histories in this case, show that recipients in both subclasses subject to recoupment receive recoupment notices which set out the basic reason for the recoupment, the possibility of reconsideration, the conditions for waiver, and the need to consult the local Administration office within thirty days if they wish to complain. For subclass one Plaintiffs (at least until January, 1975), recoupment begins immediately after the initial overpayment decision is made. For subclass two Plaintiffs, the notice is sent thirty days before actual recoupment begins. In practice, actual adjustment may, at the discretion of the Payment Center, be extended beyond 30 days when more time is needed to consider and process the matter. After the first determination is made, if reconsideration or waiver is requested, recoupment is further deferred until those issues are determined on the basis of any documentary evidence submitted. Finally, a post-recoupment hearing is possible should the claimant wish to seek additional review.[15]

The initial overpayment and recoupment notice sent to beneficiaries does not set forth the forms needed for reconsideration and waiver, or information about how to complete them. The information and forms missing in the initial notice are not generally made available when the claimant consults his local Administration office. When reconsideration or waiver consideration is requested, the Administration's decision is based upon a claimant's *ex parte* presentation of documentary evidence on an issue which he may understand only nebulously. Many of these claimants are elderly and disabled people whose capacities may frustrate an effective documentary presentation of their case. No oral hearing is given prior to the beginning of recoupment, and any deferral of recoupment beyond 30 days after the date of the initial notice lies completely within the discretion of the Administration. Should a claimant convince the Administration to reverse itself *ex parte* on the overpayment issue, a reduced or suspended payment may ensue with a refund coming a month or more later.

Statistics provided by the Defendant [16] in this case indicate the following:

(a) In 1970 there were overpayments in approximately 1,250,000 cases.

---

11. Plaintiff's Exhibit, P–15.

12. Affidavit of Nancy Yamasaki, Exhibit A.

13. The pertinent parts of the initial notice were virtually the same as those reprinted in note 7, *supra.*

14. The three subclass two Plaintiffs, acting upon advice of counsel, eventually did complete and file the requisite forms after the initial thirty days had elapsed. Trial testimony indicates, however, that timely completion of the forms would not have altered the Plaintiffs' current status. *See also* note 9, *supra.*

15. *See* 42 U.S.C. § 405(b) (1969), and 20 C. F.R. § 404.917 (1973).

16. Affidavit of Bernard Popick, Director of the Bureau of Disability Insurance of the

(b) Of these 1,250,000 overpayments, there were requests for reconsideration in approximately 12,000 cases.

(c) Of the 12,000 reconsideration determinations with respect to overpayments, there were approximately 8,250 reversals and approximately 3,750 affirmances.

(d) Of the 3,750 reconsideration affirmances with respect to overpayments, there were requests for hearing in approximately 1,600 cases.

(e) Of the 1,600 cases that went to hearing with respect to overpayments, there were reversals in approximately 560 cases and affirmances in 1,040 cases.

Stated another way, these statistics mean:

(a) less than one per cent of the beneficiaries in overpayment status contest the matter.

(b) of those who do contest the initial overpayment determination, about sixty-nine per cent succeed in getting the Administration to reverse itself.

(c) about forty-three per cent of those whose overpayment status is affirmed upon reconsideration seek on oral (post-recoupment) hearing.

(d) of those who get an oral hearing, more than one-third succeed in getting the Administration to reverse itself.

(e) overall, of that small percentage of claimants questioning the overpayment determination, about seventy-three per cent (8,250 + 560 out of 12,000) finally succeed in obtaining relief.

It is quite clear from the above that when the claimant feels he has a strong enough case to question the Administration's initial overpayment determination, there is a very substantial chance that the Administration will eventually reverse itself. What is saddest and perhaps most important about this fact is that many social security recipients, like the Plaintiffs here, depend upon their full monthly benefit payments for subsistence.[17] Erroneous recoupments often cause the aged and infirm drastic hardship.[18]

*Jurisdiction:*

The Defendants have moved for dismissal for lack of subject-matter jurisdiction. Plaintiffs assert that federal jurisdiction exists under 28 U.S.C. § 1331(a) (1966), 28 U.S.C. § 1361 (Supp. I, 1972), and 5 U.S.C. § 701 et seq. (1967) (hereinafter the "A.P.A."). While § 1361[19] may have been intended to increase the availability of mandamus jurisdiction beyond that under common law,[20] even under the traditional rules for mandamus writs, § 1361 applies to this case.[21] At common law, mandamus

Social Security Administration, Department of Health, Education, and Welfare, para. 36.

17. The Administration's own Claims Manual § 5000 states, "Most people who get an RSDI check depend upon it for the necessities of life."

18. For example, Plaintiff Elliott was forced to seek emergency welfare assistance from the State of Hawaii after her social security payment for June 1972 was withheld.

19. § 1361 states: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty to the plaintiff."

20. Whether § 1361 was supposed to expand mandamus jurisdiction beyond common law rules is an open question. *Compare* Burnett

v. Tolson, 474 F.2d 877, 880 n. 5 and n. 6 (4th Cir. 1973) *with* Peoples v. United States Dept. of Agriculture, 138 U.S.App. D.C. 291, 427 F.2d 561, 565 (1970). *See generally*, 7B J. Moore, Federal Practice § 1361, at 536 (2d ed. 1973).

21. The court does not decide the 28 U.S.C. § 1331(a) and 5 U.S.C. § 701 et seq. issues raised by the Plaintiffs, but notes in passing that support exists for either jurisdictional base. 5 U.S.C. § 706(2) applies to this case, and the A.P.A. has been viewed as a jurisdictional grant independent of other statutes. Bass v. Richardson, 338 F.Supp. 478, 482 (S.D.N.Y.1971); (for authorities *pro* and *con*) *see generally*, Aguayo v. Richardson, 473 F.2d 1090, 1101–1102 (2d Cir. 1973); Mills v. Richardson, 464 F.2d 995, 1001 n. 9 (2d Cir. 1972). Although the amount in controversy requirement may preclude § 1331(a) jurisdiction, some courts

would issue when three elements coexisted, namely, 1) a clear right in the plaintiff to the relief sought; 2) a clear duty on the part of the defendant to do the act in question;[22] and 3) the lack of another adequate remedy. Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969).

▮ As to the third requirement, the Plaintiffs, if denied federal jurisdiction, may not have an adequate remedy elsewhere, see Burnett v. Tolson, supra note 20, 474 F.2d at 882–883. The state courts may not be able to issue the requested injunctive relief, see State of Alabama v. Rogers, 187 F.Supp. 848, 852 (M.D.Ala.1960); R. Arnold, The Power of State Courts to Enjoin Federal Officers, 73 Yale L.J. 1385 (1964), and any removal to a federal court from a state court would lie within the defendants' sole discretion. Moreover, the first and second requirements are met when the application of a Supreme Court ruling to the instant case clearly shows the existence of plaintiff's constitutional right and its denial by the defendant. Mead v. Parker, 464 F.2d 1108 (9th Cir. 1972); Burnett v. Tolson, supra note 20; Daigle v. Warner, 348 F.Supp. 1074 (D.C.Hawaii 1972), rev'd on nonjurisdiction grounds, 490 F.2d 358 (9th Cir. 1973).[23]

While the applicability of the relevant Supreme Court ruling should be beyond doubt in the opinion of the district court judge, it need not be so certain as to preclude a different opinion from another court. For example, in Daigle, supra, the Chief Judge of this District Court under § 1361 applied Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) to summary courts-martial. The Ninth Circuit later reversed, differing with the District Court's use of Argersinger without attacking its assertion of § 1361. In this case, the Plaintiffs rely upon Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (hereinafter "Goldberg") to establish the existence of the constitutional right to adequate notice and prior hearings in Administration recoupment cases. One court has already approved § 1361 jurisdiction and the application of Goldberg to the termination and recoupment of medicare benefits under Administration regulations similar to those involved in this case. Martinez v. Richardson, supra note 9. Accordingly, the applicability of Goldberg to this case is sufficiently apparent to establish for § 1361 jurisdictional purposes the plaintiff's clear right and the defendant's clear duty.[24]

---

have indicated that when the deprivation of constitutional rights is at issue, the jurisdictional amount is automatically satisfied. Accord, Spock v. David, 469 F.2d 1047 (3d Cir. 1972); Cortright v. Resor, 325 F.Supp. 797, 809 (E.D.N.Y.1971). Contra, Lynch v. Household Finance Corp., 405 U.S. 538, 547, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). See generally, Burnett v. Tolson, supra note 20, 474 F.2d at 880 n. 4.

22. This traditional requirement is sometimes stated as a duty plainly and positively ascertained, and free from doubt. Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218–219, 50 S.Ct. 320, 74 L.Ed. 809 (1930); Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364, 367 (10th Cir. 1966).

23. In Mead, a case wherein the adequacy of a prison library was challenged, the Ninth Circuit held that § 1361 jurisdiction applied because Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970) aff'd sub nom. Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.

2d 142 (1971) had established constitutional standards for prison libraries. In Burnett, the Fourth Circuit asserted § 1361 jurisdiction in a case wherein the prior refusal to allow pamphlet distribution in a public area on a military base was said to be governed by Flower v. United States, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972) which declared unconstitutional the arrest (under 18 U.S.C. § 1382) of a leafleteer previously barred from a military base.

24. In Knuckles v. Weinberger, 371 F.Supp. 565 (N.D.Cal.1973), wherein the regulations under § 404 of the Act were challenged on due process grounds, Judge Wollenberg distinguished the Mead case, and ruled that § 1361 jurisdiction did not exist because the applicability of Goldberg to this type of case was not certain enough to support mandamus jurisdiction. With all due respect to Judge Wollenberg, I disagree that the application of Goldberg is unclear, and that Mead is distinguishable. The court's awareness in

*Due Process and Hearings Prior to Recoupment:*

■ *Goldberg* establishes the principle that when the impact of an erroneous administrative decision upon the individual is so severe as to deprive him of the means by which to live, due process requires that the individual have an opportunity to be heard and to cross-examine witnesses before any adverse decision is effected. Specifically, *Goldberg* held that a hearing had to be afforded the individual before his state welfare benefits were terminated. In reaching its decision, the *Goldberg* Court focused upon three considerations: The impact of an erroneous decision upon the individual, the government's interest in fulfilling the purpose of welfare legislation by protecting against administrative mistakes, and the government's interest in conserving the public fisc and minimizing administrative burdens. The *Goldberg* Court found that "termination of [welfare] aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits," 397 U. S. at 264, 90 S.Ct. at 1018. It also found that important governmental interests were served by ensuring that welfare was given to eligible recipients without interruption. Finally, it found that the additional burden on the government's administration and fisc did not outweigh the first two considerations in favor of providing a prior hearing.

■ The application of *Goldberg* to this case is simply inescapable.[25] Since

---

*Mead* that the library in question was more deficient than the one in *Gilmore* does not necessarily reflect an understanding that § 1361 jurisdiction applies only when the constitutional infirmity is absolutely identical to (in kind) and exceeds (in degree) that ruled upon in a Supreme Court case. Rather the awareness of the greater library deficiency in *Mead* may have been directed towards the statement of claim issue in the case: "We have no doubt that, under Gilmore v. Lynch, *supra,* and Johnson v. Avery, 1969, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718, the named petitioners have stated a prima facie case under both theories," *supra,* 464 F.2d at 1111. When discussing § 1361 jurisdiction, the *Mead* court stated (without mentioning *Gilmore*) that although § 1343 would not apply, . . . "the wrong done, if any, is just as much a violation of the federal Constitution as if done by a state official," *supra,* at 1111. The court's qualification of the wrong by "if any" suggests that the Plaintiff's right and the Defendant's duty need not be as absolutely certain as Judge Wollenberg would seem to require.

25. In Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972) (Brennan, Douglas, and Marshall, JJ., dissenting), three Justices dissented to the Court's decision to decline ruling on the application of *Goldberg* to the termination of social security disability benefits. The dissenters also expressed the view that *Goldberg* should be so applied. *Accord,* Note, Procedural Due Process and the Termination of Social Security Disability Benefits, 46 S.Cal.L.Rev. 1263 (1973). *Goldberg* has also been applied in public housing cases. *See e. g.,* Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970), cert. denied, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971).

The cases cited by the Defendant are clearly distinguishable. It is true that in Kelly v. Wyman, 294 F.Supp. 893, 901 n. 20 (S.D.N.Y.1968), aff'd *sub nom. Goldberg,* the court did suggest in *dicta* that its ruling might not apply to the federally administered Old-Age, Survivors, and Disability Insurance Program. However, this was not an issue in the case, and the Supreme Court in *Goldberg* expressed no opinion on the issue. In Torres v. N. Y. State Dep't. of Labor, 333 F.Supp. 341 (S.D.N.Y.1971), aff'd, 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228 reh. denied 410 U.S. 971, 93 S.Ct. 1446, 35 L.Ed.2d 707 (1973), the court ruled that due process did not require a hearing prior to the suspension or termination of unemployment benefits; but in that case, the two named Plaintiffs were afforded a hearing prior to termination of their benefits, and new regulations made the issue moot as to other plaintiffs. Messer v. Finch, 314 F. Supp. 511 (E.D.Ky.1970) held that social security disability benefits could be suspended without a prior hearing, but that judgment was vacated for mootness, 400 U.S. 987, 91 S.Ct. 455, 27 L.Ed.2d 435 (1971). Anderson v. Finch, 322 F.Supp. 195 (N.D.Ohio 1971) refused to apply *Goldberg* to social security benefits. The Sixth Circuit remanded for reconsideration in light of *Goldberg.* 454 F.2d 596 (6th Cir. 1972).

Recently, when the recipient of unemployment compensation was given an informal personal interview prior to the termination

most social security recipients depend upon their full benefits for the necessities of life,[26] the adverse impact of an erroneous suspension or reduction upon them is great.[27] Starvation may be slower if benefits are reduced or suspended rather than terminated as in *Goldberg*,[28] but some recipients will suffer nonetheless. As the *Goldberg* Court noted, the government has an interest in welfare as a guard "against the societal malaise that may flow from a widespread sense of unjustified frustration and insecurity," 397 U.S. at 265, 90 S. Ct. at 1019. So is the Social Security Act ". . . designed for the protection of society, and enacted to alleviate the burdens which rest on large numbers of the population because of the insecurities of modern life, particularly those

accompanying old age, unemployment, and disability, . . ." Sayers v. Gardner, 380 F.2d 940, 942 (6th Cir. 1967).[29] As with welfare, the same governmental interests that counsel the provision of social security benefits, counsel as well its uninterrupted provision to those eligible to receive it, and pre-recoupment hearings are indispensable to that end. *See Goldberg*, 397 U.S. at 265, 92 S.Ct. 2006. Finally, *Goldberg* suggests that the government's objection to pre-recoupment hearings on administrative and fiscal burden grounds cannot outweigh the arguments in favor of such hearings.[30] This seems especially true in this case: The Administration's own statistics indicate that only a small percentage of overpayment cases will need to be contested beyond the "paper" hearing stage.[31] Pre-recoupment hearings

of benefits and the record reflected the absence of a factual dispute or the misapplication of rules and regulations, the Ninth Circuit reversed the lower court and held that a full evidentiary hearing prior to benefit termination as in *Goldberg* was not required. Crow v. Cal. Dep't. of Human Resources Dev., 490 F.2d 580 (9th Cir., 1973). The court distinguished *Goldberg* on the grounds that "grievous loss" was not involved in terminations of unemployment compensation. *Crow* is clearly inapplicable to the case at hand: The Plaintiffs received no prior informal hearing and this court has found that recipients of social security benefits are likely to suffer "grievous loss" when benefits are erroneously terminated.

26. *See* note 17, *supra*.

27. The Supreme Court has found an adverse impact sufficient to impose a prior hearing requirement in circumstances far less dire than when necessities of life are concerned, namely, when a deprivation of property was involved. Though a hearing was afforded only three days after the repossession of goods (*i. e.*, a stove and stereo), the Court held that due process was violated because there was no hearing prior to the repossession. Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972). Similarly, when a state revoked the license of uninsured motorists involved in accidents and the only prior hearing given did not consider the motorist's possible fault, the Court ruled, ". . . before the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there

is a reasonable possibility of a judgement being rendered against him as a result of the accident." Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971).

28. It has been suggested that *Goldberg* may be distinguishable from other cases because it involved terminations of benefits, not reductions. *See* Wheeler v. Montgomery, 397 U.S. 280, 284–285, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) (Chief Justice Burger dissenting); Daniel v. Goliday, 398 U.S. 73, 90 S. Ct. 1722, 26 L.Ed.2d 57 (1970). However, at least one court has intimated that reductions in grants as recoupment for past advances would be covered by *Goldberg*. Hagans v. Wyman, 462 F.2d 928 (2d Cir. 1972), cert. to 2d Cir. granted *sub nom.* Hagans v. Lavine, 412 U.S. 938, 93 S.Ct. 2784, 37 L.Ed.2d 396 (1973).

29. *See also* Note, Procedural Due Process and The Termination of Social Security Disability Benefits, *supra* note 25.

30. ". . . fiscal considerations are always relevant, but seldom if ever decisive in cases of this sort." Crow v. Cal. Dep't. of Human Resources, 325 F.Supp. 1314, 1317 (N.D.Cal.1970) (termination of unemployment compensation without a prior hearing), cert. denied 408 U.S. 924, 92 S.Ct. 2495, 33 L.Ed.2d 335 (1972), rev'd on other grounds, 490 F.2d 580 (9th Cir. 1973).

31. *See* text accompanying note 16, *supra*. While the court finds that a prior oral hearing is constitutionally necessary when requested, the Administration may still use its current "paper" hearing wherein documents

may also reduce the number of post-recoupment hearings necessary.[32]

■ There are other compelling reasons why the mandate of *Goldberg* must be applied to social security cases. At the heart of the right to due process lies the recognition of the need for a fair determination of issues and the hope of minimizing mistakes. In this case, the chance of administrative error is great.[33] In Kelly v. Wyman, *supra* note 25, the district court was impressed by the fact that post-termination hearings resulted in administrative reversals 36% of the time; in this case, reversals at the post-recoupment hearing stage occur more than one-third of the time.[34] Furthermore, the procedural safeguards which *Goldberg* found constitutionally insufficient for lack of a prior hearing were more stringent than those of the Administration.[35] It is thus not surprising that one court has approved the application of *Goldberg* to procedures similar to those here at issue. *See* Martinez v. Richardson, *supra* note 9. *But see* Mills v. Richardson, *supra* note 21, 464 F.2d at 1001 *(dicta)*.

■ Attempts to distinguish *Goldberg* on the ground that fact issues are not present in recoupment cases, or on the ground that the evidence involved is more reliable, are futile. Issues of fact arise in virtually all contested recoupment situations.[36] To predict when an issue of fact will not be present on a case by case basis is impossible. Although the district court in Kelly v. Wyman, *supra* note 25, 294 F.Supp. at 905, may have been influenced in its decision by the fact that welfare terminations sometimes were based upon rumors or "tips", the *Goldberg* Court did not base its decision on the possibility that flimsy

filed by the claimant are reviewed to select out those cases which may be reversed without a hearing. The Administration has claimed that the increased cost of continuing benefits until a hearing is had could be $35 million. However, this figure makes two dubious assumptions, namely that everyone subject to recoupment will request a hearing, and that all will take two years to complete the appeals process. The first assumption is questionable in light of current statistics on recipients who contest overpayment determination. *See* text accompanying note 16, *supra*. The second "two year" assumption assumes that the current time for the full appeals process could not be shortened somewhat by the Administration itself.

**32.** *Compare*, Richardson v. Wright, *supra* note 25, 405 U.S. at 223, 92 S.Ct. 788, 31 L.Ed.2d 151 (dissenting opinion).

**33.** *See* text accompanying note 16, *supra*. These figures of course should not be taken to impugn the competence of the Administration; rather, they attest to its fairness and the complexity of making initial overpayment determinations.

**34.** *See* text accompanying note 16, *supra*.

**35.** Under the procedure challenged in *Goldberg*, a welfare termination decision was made only after the recipient discussed the case with a caseworker (a safeguard not present in this case). A unit supervisor then reviewed the caseworker's termination decision. If the supervisor concurred, the recipient was given seven days to request another review by a higher official. Like the Plaintiffs here, the welfare recipient could submit a written statement supporting his case to this higher official. If the higher official felt termination was warranted, welfare aid stopped immediately. The welfare recipient, like the Plaintiffs here, could then request a post-termination hearing.

**36.** The *Goldberg* Court apparently limited its holding to situations where issues of fact are present, 397 U.S. at 268 n. 15, 90 S.Ct. 1011. However, subsequent cases suggest that hearings are required by due process even if no issues of fact are present. In Yee-Litt v. Richardson, 353 F.Supp. 996 (N.D.Cal.1973), aff'd Carleson v. Yee-Litt, 412 U.S. 924, 93 S.Ct. 2753, 37 L.Ed.2d 152 (1973) the plaintiffs challenged on due process grounds a California regulation which authorized the termination of welfare aid whenever a Chief Referee determined that only issues of policy and no issues of fact or judgment were present. Judge Carter held that under *Goldberg* this regulation violated due process "because of the inherent difficulties in using this fact policy distinction," 353 F.Supp. at 999. Similarly, in Mothers' & Children's Rights Organization v. Sterrett, 467 F.2d 797 (7th Cir. 1972), the Court held that even when welfare benefit terminations were based upon pure questions of law, reasonable opportunity for argument had to be given, although a full evidentiary hearing was not necessary.

evidence might underlie a termination decision. However reliable the evidence may be, when the adverse administrative determination depends upon the resolution of factual issues and the application of legal rules to the facts found, that is enough to invoke due process hearing requirements.[37]

■ Therefore, the court finds that the Administration's recoupment regulations and procedures here challenged violate the Plaintiff's right to due process of law, and orders that henceforth when requested [38] the Plaintiffs of both subclasses be given an oral hearing prior to recoupment.[39] At the hearing, the correctness of the overpayment determination and the recipient's statutory right to waiver under 42 U.S. C. § 404(b) (1969) must be examined. However, since under 20 C.F.R. § 404.-502(c) (1973), partial adjustment is not

a mandate, but lies within the unfettered discretion of the Administration even when the requisite conditions are met, a hearing need not be given on the partial adjustment issue.[40]

■ The pre-recoupment hearing need not take the form of a judicial or quasi-judicial trial, but it must allow the claimant to present his case orally, to submit evidence with witnesses or documents, and to cross-examine witnesses against him. Representation by legal counsel or other persons is neither required nor prohibited. The hearing officer should not have participated in making the determination under review; he should base his decision solely on the legal rules and evidence adduced at the hearing; he should state the reasons for his decision and the evidence relied upon. *Goldberg*, 397 U.S. at 266–271, 90 S.Ct. 1011, 25 L.Ed.2d 287.

37. *See* Richardson v. Wright, *supra* note 25, 405 U.S. at 216, 92 S.Ct. 788 (dissenting opinion).

38. The Plaintiffs due process right to a hearing may of course be waived by them. It is for the Administration to decide whether obtaining written waivers of the right to a hearing in all, some, or no cases is advisable, but the court notes in passing that written waivers would minimize litigation over whether a recipient knowingly and intelligently decided not to request a hearing.

39. At first blush the need for a prior hearing in annual report cases (subclass one) may be doubtful because the reports are filed by the claimants themselves and overpayments are determined by the mechanical application of a statutory earnings standard. However, this is but another way of saying that annual report cases involve "more reliable" evidence than others. Even if this supposed reliability were a factor, nothing makes a report more unreliable than when its own author says it is a mistake. In fact, it may be that because overpayments based on annual reports present relatively straight forward fact issues, the claimant will seek an oral hearing only when a mistake is clear.

40. The Plaintiffs have no due process right to a hearing on partial adjustment because they have no protected property interest in

it. In Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972), when a university did not rehire a teacher and was under no contractual, statutory, administrative or other obligation to decide the rehiring issue according to any procedure or standard, but could exercise its unfettered discretion, the Court held that the teacher had no constitutional right under the Fourteenth Amendment to a statement of reasons and a hearing on the university's decision not to rehire him. The Court indicated that a right to procedural due process exists only when a protected interest of liberty or property is involved. As to a protected property interest, the Court stated, "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it," at 577, 92 S.Ct. at 2709. There is no interest of liberty at stake in a partial adjustment determination; and even if a claimant meets the conditions for partial adjustment, he has no "legitimate claim of entitlement to it" since the Administration in its discretion can still rule against him.

Furthermore, since no due process right covers the partial adjustment problem, this court cannot say that partial adjustment or the form needed to file for it, must as a constitutional matter be mentioned in the initial overpayment notice.

*Due Process and Notice:*

■ Since a constitutional right can be waived only knowingly, the Plaintiffs must be notified of their due process right to request and receive a pre-recoupment hearing on the overpayment and waiver issues. Notice of that right must be stated plainly and obtrusively in the initial overpayment letter. Furthermore, the initial notice must describe the claimant's right at any hearing to be represented by a lawyer or other person, present evidence, present witnesses in his behalf, cross-examine adverse witnesses, be afforded a fair and impartial hearing examiner, examine all documents prior to and during the hearing, and be given a prompt decision by the decisionmaker.

■ Due process also requires timely, adequate, and detailed notice of the reasons for an initial overpayment determination. *Goldberg,* at 267, 90 S.Ct. 1011. In *Goldberg,* the Court found, "New York employs both a letter and a personal conference with a caseworker to inform a recipient of the precise questions raised about his continued eligibility. Evidently the recipient is told the legal and factual bases for the Department's doubts. This combination is probably the most effective method of communicating with recipients," at 268, 90 S.Ct. at 1020. Since the Administration's current procedures do not include a caseworker interview, the social security recipient may not be as fully apprised of the legal and factual bases for the overpayment finding as the welfare recipient was in *Goldberg.*

In annual report overpayment cases involving subclass one Plaintiffs, the recipients are presumed to be familiar with their own reports and the reasons for filing them. The reverse side of the current initial notice explains basically how withheld amounts are determined, and the notice's invitation to consult local Administration offices when questions arise is a necessary and added protection. Subclass two Plaintiffs present a more difficult notice problem. The myriad circumstances and diverse information which may underlie an overpayment determination make it impossible for this court to define what is and is not adequate notice for all subclass two cases. To indicate (as the reason for the overpayment decision) a "duplicate payment" over specified periods may be enough notice for the claimant, but a stated reason such as "processing error" may not be.[41] However, it is reasonable to assume that subclass two Plaintiffs, and subclass one Plaintiffs, who doubt the overpayment, will consult their local Administration office for clarification.

■ However, in light of the foregoing, the Administration's initial notice does not complete its duty to inform the subclass one and two Plaintiffs about the reasons for an overpayment determination. Those Plaintiffs who consult their local Administration office to contest or inquire about the alleged overpayment must receive any additional information which the Administration has.[42] The Administration must inform the Plaintiffs requesting a hearing about all the pertinent details, laws, and regulations supporting the Administration's case far enough in advance to afford the claimant sufficient time to prepare for the hearing.[43]

■ Finally, while the Administration's current notice adequately informs

41. *See* text accompanying notes 11–12, *supra.*

42. Normally when an administrative agency is about to take action adverse to a citizen, due process requires that the citizen be informed of the evidence upon which the agency relies so that he can rebut that evidence effectively. *See* Langevin v. Chenango Court, Inc., 447 F.2d 296, 300 (2d Cir. 1971); Escalera v. N. Y. City Housing Authority, 425 F.2d 853, 862 (2d Cir. 1970);

cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

43. While the text for procedural due process is one of fundamental fairness in the light of the total circumstances, due process always requires that a reasonable opportunity be given the individual to prepare for and meet the case against him. *See e. g.,* Whitfield v. Simpson, 312 F.Supp. 889, 894 (E.D.Ill. 1970).

the recipient of the possibility of reconsideration and waiver, it does not indicate what requisite forms must be completed. The record indicates that even those recipients seeking aid at a local office are not provided with information about or copies of the reconsideration and waiver forms. These deficiencies must be remedied. Claimants failing to file the required forms may lose their case for failure to comply with administrative procedures. Therefore, the initial overpayment notice should specify the reconsideration and waiver forms which must be requested from the local office. The local office also has the duty to inform inquiring claimants about the requisite forms, to provide them with those forms if requested, and to assist in their completion. Accordingly:

Judgement may be entered providing that Defendant Weinberger, his successor, his agents and employees at the Social Security Administration's Payment Centers, and all persons in active concert or participation with them shall be restrained and enjoined from reducing, terminating, or suspending social security old age and disability benefits accruing to Plaintiffs and their class without affording them an opportunity for a hearing before any reduction, termination, or suspension is effectuated;

That Defendant Weinberger, his successor, his agents and employees at the Social Security Administration's Payment Centers, and all persons in active concert or participation with them shall restore any and all money withheld since June 22, 1972, without a prior hearing, from Plaintiffs Nancy Yamasaki, Isabelle Ortiz, John V. Vaquilar, Raymond Gaines, and Jordan A. Silva pending the holding of a preadjustment hearing in each of their individual cases;

That the Defendants shall submit to this court, for its approval, a copy of the proposed notice to be given to the members of the class informing them of the judgement herein, and a copy of the revised rules, regulations, and procedures which they will adopt to conform with the dictates of the judgement herein; and

That this court will retain jurisdiction over this case to order any further action it may deem appropriate and just in light of the decision herein.

The foregoing constitutes the Findings of Fact and Conclusions of Law required by Rule 52(a) of the Federal Rules of Civil Procedure.