CONCERNED PARENTS OF STEPCHIL-
DREN, on behalf of their members and
all others similarly situated, and Janice
Everill, Ellen Lehwalder and Linda Rey,
on behalf of themselves and all others
similarly situated, Plaintiffs and Appel-
lants,

v.

Anthony MITCHELL, individually and in
his capacity as Executive Director of the
Utah Department of Social Services, and
Keith Oram, individually and in his ca-
pacity as Director of the Office of As-
sistance Payments Administration, De-
fendants and Respondents.

No. 16870.

Supreme Court of Utah.

March 24, 1982.

Bruce Plenk, of Utah Legal Services, Inc., Salt Lake City, for plaintiffs and appellants.

David L. Wilkinson, Atty. Gen., Paul M. Tinke, Chief Deputy Atty. Gen., and Sharon Peacock, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

STEWART, Justice:

The basic issue in this case is whether the State of Utah unlawfully terminated benefits for stepchildren paid pursuant to the Aid to Families with Dependent Children (AFDC), a cooperative federal-state welfare-type program administered by the states and funded on a matching fund basis by both the state and federal governments.

The AFDC program was created by Title IV–A of the Social Security Act, 49 Stat. 620, as amended, 42 U.S.C., § 601 et seq. The state statutory provisions providing for the administration of the program are found in Utah Code Ann., 1953, § 55–15a–1 et seq. The AFDC program was intended to provide public assistance to families with children who are "deprived of parental support due to the death, disability, or absence of a parent," and who meet certain standards of economic need. Federal regulations specify that the support standards for stepchildren be determined by each state with respect only to a child's natural or adoptive parent unless the state law imposes a support requirement on a stepparent similar to that imposed on natural and adoptive parents under state law. 45 CFR § 233.90.

After the state terminated stepchild assistance under the AFDC program, plaintiffs filed suit in the Third District Court for Salt Lake County for a legal determination that termination of the stepchild assistance program violated the Social Security Act, the United States Department of Health, Education, and Welfare (HEW) implementing regulations, the Utah Administrative Rule-making Act, and the equal protection clauses of the Utah and United States constitutions. Plaintiffs also sought injunctive relief to restrain the defendants from eliminating the stepchild assistance program and directing them to continue stepchild assistance to all eligible families with stepchildren and to afford plaintiffs an administrative hearing. On cross-motions for summary judgment, the district court ruled against the plaintiffs and in favor of defendants, and this appeal followed.[1]

## I.

The State of Utah, through the Department of Social Services, paid AFDC benefits to appellants Everill, Lehwalder and Rey, but terminated those payments May 31, 1979, pursuant to a notice of termination dated May 10, 1979. The termination was based on a change in Utah law brought about by enactment of S.B. 54 during the 1979 legislative session. S.B. 54 imposed a legal obligation on stepparents to support stepchildren for the duration of the marriage of a stepparent to the natural or adoptive parent, subject to one exception, which is discussed below. In conjunction with the passage of S.B. 54, the Legislature deleted appropriations for that part of the AFDC program for children whose parents had remarried. The consequence was that most stepchildren then had to look to stepparents for support instead of AFDC benefits.

The basic issue in this case is whether plaintiffs' children qualify as "dependent children" as defined by 42 U.S.C. § 606, and 45 CFR § 233.90. There are two basic elements to the definition of a "dependent child." First, a child must be needy, that is, the amount of income must be less than

---

1. The action was pled as a class action, but the trial court did not determine whether the case should proceed as a class action case. The issue has not been raised on appeal.

Utah has determined is necessary for a child's needs. Second, a child must be "deprived of parental support or care" by reason of a parent's death, absence, or physical or mental incapacity, or unemployment, 42 U.S.C. § 606–607. Under HEW regulations, a child meets the latter requirement when there is only one "parent" in the home or when there are "two parents" in the home and one or both are incapacitated or unemployed. 45 CFR § 233.90(c)(1)(i). A stepparent qualifies as a "parent" for the purposes of the Act if he meets the standards established by 45 CFR § 233.90(a) at 107–8, which provides that a "parent" means a natural parent, an adoptive parent, *or a stepparent* who:

> ... is ceremonially married to the child's natural or adoptive parent and is *legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children.* Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State, nor may the State agency prorate or otherwise reduce the money amount for any need item included in the standard on the basis of assumed contributions from nonlegally responsible individuals living in the household. [Emphasis added.]

A state which has chosen to participate in Title IV–A programs may not deny aid to persons coming within the federal eligibility standards established by HEW regulations. *Quern v. Mandley,* 436 U.S. 725, 98 S.Ct. 2068, 56 L.Ed.2d 658 (1978); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Willard v. State, Department of Social and Health Services,* 91 Wash.2d 759, 592 P.2d 1103 (1979); *McLemore v. Welfare Division of Department of Human Resources,* 92 Nev. 410, 551 P.2d 1101 (1976).[2] See *Nolan v. de Baca,* 603 F.2d 810 (10th Cir., 1979).

The appellants contend that support obligations imposed by Utah law on stepparents in Utah was not sufficient under federal law to qualify stepparents as "parents," thereby justifying termination of AFDC payments. Specifically, the argument is that S.B. 54, which redefined the legal support obligation of a stepparent to a stepchild, fails to impose the support obligations on stepparents which are required by 45 CFR § 233.90(a), and that therefore the termination of benefits to stepchildren was illegal. For a stepparent's duty of support to be sufficient to justify termination of AFDC payments, the financial support obligation of the stepparent must be established by a state law of "general applicability" and the obligation must be to the "same

---

**2.** These cases are based on the proposition that courts may grant declaratory and injunctive relief to compel state compliance with federal statutes and regulations. However, the Title IV program is a grant-in-aid program. Since federal assistance is given on condition that the state comply with federal requirements, a state's failure to comply may result in the termination of federal funding. See 42 U.S.C., 604(a) which provides:

> § 604. Stopping payments on deviation from required provisions of plan or failure to comply therewith
> (a) In the case of any State plan for aid and services to needy families with children which has been approved by the Secretary, if the Secretary, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of such plan, finds—

> ....
> (2) that in the administration of the plan there is a failure to comply substantially with any provision required by section 602(a) of this title to be included in the plan;
> the Secretary shall notify such State agency that further payments will not be made to the State (or, in his discretion, that payments will be limited to categories under or parts of the State plan not affected by such failure) until the Secretary is satisfied that such prohibited requirement is no longer so imposed, and that there is no longer any such failure to comply. Until he is so satisfied he shall make no further payments to such State (or shall limit payments to categories under or parts of the State plan not affected by such failure).

extent" as that of natural or adoptive parents to their children. More pointedly, appellants contend that compliance with 45 CFR 233.90(a) requires that state law comply with the following "tri-partite test":

1. The duty of support must be of general applicability;

2. The duty must be one which can be compelled by court order to be fulfilled even after the stepparent has deserted or abandoned the household; and

3. The duty must exist regardless of whether the children would otherwise receive AFDC payments.

▇▇ Judicial deference is usually accorded an agency's interpretation of a statute which that agency is charged with enforcing. *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *New York State Dept. of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). Utah adheres to the same rule. *Lockheed Aircraft Corp. v. State Tax Commission*, Utah, 566 P.2d 1249 (1977). As a general proposition, an agency interpretation of its own regulations is also entitled to that deference. *McKnight v. State Land Board*, 14 Utah 2d 238, 381 P.2d 726 (1963). In this case the so-called tri-partite test is a HEW construction of its own regulations.

Appellants argue that S.B. 54 fails to meet the tri-partite test in three particulars. The challenge is laid under the first two points of the tri-partite test. The "first and clearest difference" between the support obligation of stepparents and natural parents under Utah law, according to appellants, is in duration. Under S.B. 54, which became Utah Code Ann., 1953, 78–45–4.1, a stepparent could terminate his obligation of support by separating from his or her spouse and filing for a divorce. Thus, a stepparent could escape the duty of child support for stepchildren prior to a divorce. Section 78–45–4.1 (prior to its subsequent amendment in 1980) provided:

> A stepparent shall support a stepchild to the same extent that a natural or adoptive parent is required to support a child. Provided, however, that upon the termination of the marriage or common law relationship between the stepparent and the child's natural or adoptive parent, or in cases where there is a filed pending divorce action with separation or a legal separation between the stepparent and the child's natural parent, the support obligation shall be as if the marriage had never taken place.

Appellants ignore the 1980 amendment to § 78–45–4.1, which modified that section to read as follows:

> A stepparent shall support a stepchild to the same extent that a natural or adoptive parent is required to support a child. Provided, however, that upon the termination of the marriage or common law relationship between the stepparent and the child's natural or adoptive parent the support obligation shall terminate.

Thus, S.B. 54, to the extent it terminated the support obligation of the stepparent upon the filing of a divorce action and separation, has been supplanted by the 1980 amendment which is now controlling.

▇ The action in this case is not for damages; it seeks only injunctive and declaratory relief. None of the plaintiffs contends that benefits were terminated because the stepparent in the particular family abandoned the family after filing an action for support. The complaint alleges no injury as a result of the statutory provision allowing special treatment of stepparents under S.B. 54. Therefore, they have no standing to raise the issue. *Baird v. State*, Utah, 574 P.2d 713 (1978). See *Redwood Gym v. Salt Lake County Commission*, Utah, 624 P.2d 1138 (1981).

▇ Furthermore, the 1980 amendment to § 78–45–4.1 makes it unnecessary to rule on the question whether S.B. 54 was in violation of the "tri-partite test," because the issue must now be decided on the basis of existing law, i.e., the 1980 amendment. *Hall v. Beals*, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); *Thorpe v. Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Carpenter v. Wabash R. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940).

Furthermore, even if appellants are correct as to S.B. 54, the issue is now moot because of the intervening change in the law and the nature of the relief sought. *Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). *Diffenderfer v. Central Baptist Church of Miami Fla., Inc.*, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972); *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972); *United States v. Alaska Steamship Co.*, 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808 (1920); *Campbell v. Shelby County*, 147 Ala. 703, 41 So. 407 (1906); Wright, Miller and Casper, Federal Practice and Procedure § 3533 (1975).

## II.

Appellants also contend that in another respect stepparents are treated differently under Utah law than are natural or adoptive parents. Section 78–45–4.2 permits a stepparent to sue natural parents for indemnification of support payments which the stepparents have made. Appellants claim this difference violates the tri-partite test. We disagree.

There is no difference between the primary financial responsibility of stepparents to their stepchildren and the primary financial responsibility of natural or adoptive parents to their children. Concededly, natural and adoptive parents have no right of indemnification for support payments—the duty to support is simply a natural aspect of the obligation of a natural or adoptive parent and cannot be shifted to anyone else. But a stepparent stands on different ground—both from the point of view of his or her natural expectations and possibly, at least in some cases, his or her natural affections. Utah law simply recognizes those differences, without leaving the child bereft of support. Deference to those differences promotes the opportunities of one-parent children to grow up in a home with both a father and a mother. There is nothing in HEW regulations which is contravened by this policy. It is not the case that any difference whatsoever between the statutory support obligations of natural

parents and stepparents runs afoul of 45 CFR 233.90(a) or the tri-partite test. *Archibald v. Whaland*, 555 F.2d 1061 (1st Cir. 1977). The difference under discussion has no bearing on the welfare and security of a stepchild or any other purpose of the AFDC program.

The state policy has a rational basis and operates in an area of the law where state authority and interests are paramount. In permitting a right of indemnification to a stepparent, the state has apparently sought to lessen the stepchild support obligation as a barrier to marriage. Furthermore, HEW finds no conflict between this part of Utah law and federal law. An HEW letter to the Department of Social Services dated November 23, 1979 states that the provision in question does not lessen the obligation of the stepparent to "support his stepchildren as otherwise provided for under Utah law." There is no reason to distinguish between this agency construction of its own rules and any of its other interpretations of its rules.

Appellants also contend that a stepparent has no obligation to support a stepchild if he or she is beyond the age of 18 years, although a natural or adoptive parent might have such an obligation. Natural and adoptive parents have an obligation, if ordered by a court in a divorce action, to support natural or adoptive children until age 21. See Utah Code Ann., 1953, § 15–2–1 (as amended in 1975).

The objection is without merit for two reasons. First, the statute does not make the distinction asserted. Section 1(4) of S.B. 54, now § 78–45–2(4), defines the term "child" to mean "a son or daughter under the age of 18 years and a son or daughter of whatever age who is incapacitated from earning a living and without sufficient means." The term "stepchild" is defined by § 1(7) of S.B. 54, now § 78–45–2(7), to mean "any child" as that term is defined in § 1(4). Thus, natural, adoptive, and stepchildren stand on the same footing.

Even more compelling is the fact that federal regulations do not require a stepparent to assume a support obligation after

he or she has been divorced. A stepparent after a divorce obviously ceases to be a stepparent, and the terms of 45 CFR § 233.90(a) do not extend to imposing a support requirement on an ex-stepparent.

■ Finally, appellants contend that the state law imposing a support obligation on stepparents fails to comply with federal law because the obligation does not "appear to be the same" as that which may be imposed in an annulment proceeding, see Utah Code Ann., 1953, § 30–1–17.2. Appellants also argue that there is a "possible interpretation of § 78–45–4.1 which would allow a stepparent to avoid liability *for support due and owing* from a period of separation prior to filing for a divorce or a legal separation." [Emphasis added.]

As to the first point, there is no necessary inconsistency between the power of a court to order temporary or permanent support and maintenance under the annulment statute and the absence of a stepparent's support obligation after a divorce. As already stated, a person by definition is not a stepparent after a divorce, and there is no requirement under the law that such an obligation be imposed. Nor is there any necessary difference as to the support obligation of a stepparent prior to divorce and the obligation of a parent whose marriage may be subject to annulment.

As to the second point mentioned above, there is no difference between the obligation of a stepparent and the obligation of a natural or adoptive parent with respect to support due and owed for the period of "separation prior to filing for a divorce or a legal separation" as contended by appellants. Neither the 1979 or 1980 enactments make such a difference (except to the extent discussed above with respect to separation after filing for divorce under S.B. 54).

## III.

The second major contention on appeal is that the named state officials could not terminate the appellants' AFDC benefits without prior notice and hearing. 45 CFR § 205.10(a)(4)(iii) provides:

When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be "adequate" if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action, and a statement of the circumstances under which a hearing may be obtained *and* assistance continued. [Emphasis added]

Appellants also contend that the "notice of agency action deleting the AFDC stepchildren's assistance program" violated the Utah Administrative Rule-making Act, Utah Code Ann., 1953, § 63–46–1 et seq.

Ample notice was, in fact, given. The Utah Assistance Payments Administration sent a letter to all recipients on April 10, 1979 informing them of the change in the law. In addition, an article describing the change was published in the "Clientell," a monthly bulletin which accompanies all public assistance checks sent to recipients in the state. A third notice was given in the form of a formal notice sent to the recipients on May 10, 1979 which described the change in the law and stated that a hearing could be had if a recipient thought the termination was for a reason other than the change in state law. That notice stated:

Effective May 31, 1979, your financial and medical stepchild assistance case will be discontinued. The reason for this closure is because of a change in the Utah law which becomes effective May 8, 1979. (Vol. II, Sec. 232)

You may be eligible for other types of assistance including food stamps, medical assistance, aid to families with dependent children for the entire family, or restricted state stepchild program. If you wish to apply for any of these programs, contact your local assistance payments office at 2835 South Main, P.O. Box 15729, Salt Lake City, Utah 84115, Phone 582–5200.

A fair hearing request will not be granted unless you feel the reason for the closure action was for other than the change in state law.

If you have any questions regarding this notice, please contact the office listed above.

■■■■ Notice and hearing to individuals are fundamental rights when government makes factual individual determinations which may affect a person's fundamental interests. In the context of welfare-type programs, due process requires as much to assure fair, nonarbitrary administrative action. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Elliott v. Weinberger,* 371 F.Supp. 960 (D.Haw.1974).

Dealing with governmental entities is sometimes fraught with frustration, especially when a person is without community standing or reputation and is just another face among many who must be "processed." Accordingly, dealing fairly with large numbers of people on an individual basis requires compliance with some type of formalized procedures designed to assure individualized consideration.

■■■■ There is no quarrel with the proposition that notice and hearing requirements under Utah and federal law must be complied with to assure fair treatment of individuals when the particular facts as to them may determine the decision. But such procedures need only be employed where they may have an effect on the governmental decision-making process. The law does not require governmental administrators to comply with such requirements when the result is predetermined because required by statute.

In the instant case, the plaintiffs do not allege in their complaint that they were excluded from any benefits to which they claim to be entitled, except those AFDC benefits which were terminated because of the change in Utah law. They do not allege that they *in fact* did not have adequate notice of the termination of the AFDC stepchild program. They do not allege that

they exhausted their administrative remedies or that they lacked knowledge of available administrative remedies. Nor do they allege any facts which show them to be entitled to benefits which they are not receiving. They do not claim entitlement to AFDC benefits on any claim other than the stepchild assistance program. The only claim is strictly legal—that S.B. 54 did not comply with the tri-partite test of HEW. As to that contention there are no disputed facts as to plaintiffs' rights in particular or as to any facts in general.

Not only did plaintiffs not have a valid issue to present at an administrative hearing, but the burden was on them to request a hearing and to demonstrate that any change in benefits was not due to an incorrect grant computation rather than a change in state law. 45 CFR 205.10(a)(5).[3] There is no indication in this record that any such efforts were made.

■■■■ The appellants' attempt to compel the state now to jump through procedural hoops is without merit. Even if the procedural requirements were fully and punctiliously complied with in the manner urged by appellants, there would not be a different result. The Division of Social Services does not have the right to overrule, set aside, or ignore a state statute, whatever Title IV of the Social Security Act provides. In any event, it is dispositive in this case that plaintiffs have alleged nothing showing that they have been injured by the absence of an administrative hearing. In short, they have no standing to raise the issue. *Redwood Gym v. Salt Lake County Commission,* Utah, 624 P.2d 1138 (1981); *Baird v. State,* Utah, 574 P.2d 713 (1978).

Furthermore, the plaintiffs have sought only declaratory and injunctive relief. An administrative hearing, as shown above, could not benefit the appellants. It is a long established principle that neither an

**3.** 45 CFR 205.10(a)(6) states:

If the recipient requests a hearing within the timely notice period:

(i) Assistance shall not be suspended, reduced, discontinued or terminated ... until a decision is rendered after a hearing, unless:

(A) A determination is made at the hearing that the sole issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation ...

action for an injunction or a declaratory judgment may be used to vindicate an abstract principle of justice, or to determine a dispute in which neither a benefit may be gained nor an injury suffered. *Backman v. Salt Lake County*, 13 Utah 2d 412, 375 P.2d 756 (1962); *Lyon v. Bateman*, 119 Utah 434, 228 P.2d 818 (1951); 27 Am.Jur.2d Equity § 14.

█ The contention that the termination of benefits constitutes a denial of equal protection of the laws is without merit, and the contention that defendants failed to comply with the Utah Rule-making Act is at best harmless error since the change made was a legislative rather than an administrative change.

Affirmed. No costs.

HALL, C. J., OAKS and HOWE, JJ., and J. ALLAN CROCKETT, Retired Justice, concur.