462 F.2d 928
 Cynthia HAGANS, for herself and her two infant chlidren,
Kimberly and Korey, et al., Plaintiffs-Appellees,
v.
George K. WYMAN, as Commissioner of the New York State
Department of Social Services, and James M.
Shuart, as Commissioner of the Nassau
County Department of Social
Services,
Defendants-
Appellants.
 No. 754, Docket 72-1327.
 United States Court of Appeals,
 Second Circuit.
 Argued April 7, 1972.
Decided June 5, 1972.
 
 Carl Jay Nathanson, Freeport (Nassau County Law Services Committee, Inc., Westbury, N. Y.), for plaintiffs-appellees.
 Michael Colodner, Asst. Atty. Gen. (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Louis J. Lefkowitz, Atty. Gen., State of New York, of counsel), for defendant-appellant Wyman.
 Before CLARK, Associate Justice,* LUMBARD, Senior Circuit Judge and TYLER, District Judge.**
 TYLER, District Judge.
 This is a class action in which plaintiffs-appellees challenge the validity of 18 N.Y.C.R.R. Sec. 352.7(g) (7),[1] a regulation promulgated by the New York State Department of Social Services. Defendants-appellants, Commissioners of the New York State and Nassau County Departments of Social Services (hereinafter collectively, the "state") appeal from an order of the District Court for the Eastern District of New York which declared Sec. 352.7(g) (7) void and enjoined defendants from implementation or enforcement thereof. We conclude that issues relating to the validity of Sec. 352.7(g) (7) were not raised by the stipulated facts presented at trial and that the order must therefore be vacated and the case remanded for further consideration.
 Prior to the enactment of the regulation in question, the state was without authority to advance funds to welfare recipients who, having mismanaged their grants, were unable to keep current in their rent payments. To prevent evictions and the resultant necessity and expense of relocations and/or housing welfare recipients in motels, Sec. 352.7(g) (7) was enacted on August 6, 1971. This regulation authorizes the state to advance to welfare recipients faced with eviction funds to which they will become entitled in the future and with which they can pay rent currently due. To husband funds and discourage mismanagement, Sec. 352.7(g) (7) further provides that such monies as are advanced to forestall eviction shall be deducted from subsequent grants over the following six months, recouped by the state and presumably disbursed to other welfare recipients.
 The representative plaintiffs, five mothers and their twelve children, receive monthly Aid to Families with Dependent Children (AFDC) grants calculated to provide 90% of their familial sustenance needs. Each plaintiff, for various reasons,[2] was unable to pay her rent, and thus was served with an eviction notice by her landlord.
 To prevent the evictions and to avoid housing plaintiffs in motels, the state paid plaintiffs' rent arrearages directly to the landlords. These sums were considered as "advances" by the state, which, pursuant to 18 N.Y.C.R.R. Sec. 352.7(g) (7), deducted or "recouped" them from subsequent grants. Appellees complain that recoupment, which in some cases has drastically reduced their grants, penalizes their children for their parental misfeasances and thus contravenes Sec. 402(a) (7) and (a) (10) of the Social Security Act, 42 U.S.C. Sec. 602(a) (7) and (a) (10), and is an impermissible reduction in an AFDC grant under 45 C.F.R. Sec. 233.20(a).
 Appellees eschewed a three judge court, 28 U.S.C. Sec. 2281, and the parties proceeded on stipulated facts to an expedited trial. Rule 65(a) (2), F. R.Civ.P. After expert testimony was heard on the policy and intent of Sec. 352.7(g) (7), the court found jurisdiction under the equal protection clause of the Fourteenth Amendment and determined that the case was properly maintainable as a class action. The court then held [by virtue of its pendent jurisdiction of the statutory claim] that Sec. 352.7(g) (7) violated the Social Security Act and federal regulations enacted thereunder. The state was enjoined from implementation or enforcement of the recoupment regulation and ordered to reimburse appellees for funds which had been deducted.
 Appellants' principal argument on appeal is that because appellees' right to AFDC grants is ". . . dependent for its existence upon the infringement of property rights", Hague v. C.I.O., 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939), jurisdiction may not be found under 28 U.S.C. Sec. 1343(3). Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969). The Supreme Court, however, has just laid to rest ". . . the distinction between personal liberties and proprietary rights as a guide to the contours of Sec. 1343(3) jurisdiction." Lynch v. Household Finance Corp., 405 U.S. 538 at 542, 92 S.Ct. 1113, at 1117, 31 L. Ed.2d 424 (1972). This being so, there is jurisdiction of the instant case under 28 U.S.C. Sec. 1343(3). Carter v. Stanton, 404 U.S. 936, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); McClendon v. Rosetti, 460 F.2d 111, (2d Cir., 1972).
 Nevertheless, we conclude that the case must be remanded to permit the trial court to consider certain facts and issues which, as counsel effectively conceded on oral argument, were not brought to its attention. The record, constructed on an expedited basis on stipulated facts and limited testimony, unfortunately contains only fleeting and elliptical references to "fair hearings", despite the fact that New York is constitutionally, as well as by its own regulations, required to afford welfare recipients notice and an opportunity to be heard before their benefits may be "terminated, suspended, or reduced." Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); 18 N.Y. C.R.R. Sec. 351.26. Although there are indications that none of the named plaintiffs received hearings concerning recoupment of funds advanced to them,[3] the parties have not addressed themselves to the question of what impact, if any, the "fair hearing" mandated by 18 N.Y. C.R.R. Sec. 351.26 might have upon New York recoupment procedures. Accordingly, there remain unconsidered issues which must be resolved before the state may be permanently enjoined from implementing advance rent payments and enforcing recoupment thereof pursuant to Sec. 352.7(g) (7).
 The first issue which must be considered is whether notice and hearings are plaintiffs' due in this case. In order to make this determination, it must be decided whether recoupment of past advances from current grants is a "reduction in grant" so as to bring into effect New York fair hearing procedures. 18 N.Y.C.R.R. Sec. 351.26.
 If it be determined that plaintiffs have actually sustained a reduction in grant, any recoupment in the absence of notice and hearings would work a denial of due process of law to plaintiffs. Goldberg v. Kelly, supra. The state, in such event, would be obliged to refund recouped funds and to refrain from enforcement or implementation of 18 N.Y. C.R.R. Sec. 352.7(g) (7) unless and until fair hearings are provided.
 Until the question of fair hearings is resolved, it is premature to permanently enjoin implementation of Sec. 357(g) (7). Since it is not yet clear how the state will interpret or implement its recoupment regulation, there is ". . . the need for some further procedure, some further contingency of application or interpretation, whether judicial, administrative or executive . . . to make [ripe] the issue sought to be presented to the Court." Poe v. Ullman, 367 U.S. 497, 528, 81 S.Ct. 1752, 1769, 6 L.Ed.2d 989 (1961), (Harlan, J., dissenting). Accordingly, before holding state and federal welfare regulations in conflict, ". . . the appropriate course is to withhold judicial action pending reprocessing, [under New York fair hearing procedures], of the determinations here in dispute." Richardson v. Wright, 405 U.S. 208, 209, 92 S.Ct. 788, 789, 31 L.Ed.2d 151 (1972).
 One other problem inherent in this litigation deserves identification and consideration. It might be argued that recoupment does not entail a "reduction in grant," since only advanced funds are deducted and thus, the grant, over a six month period, would remain constant. If the trial court were persuaded by such an argument, the state might not be under any obligation to provide hearings prior to recoupment. That conclusion would not necessarily require judgment for plaintiffs, for if one were to assume that there was no reduction in grant entailed by New York's recoupment of rent advances, the question would remain as to whether or not Sec. 352.7(g) (7) was in conflict with Subchapter IV of the Social Security Act, 42 U.S.C. Sec. 601 et seq. See Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), or HEW regulations enacted thereunder.[4]
 The order of the District Court is vacated and the case remanded for further consideration in light of the matters heretofore discussed.
 LUMBARD, Circuit Judge (dissenting):
 I dissent and vote to reverse.
 I fail to understand what purpose will be served by remanding this case to the district court for its consideration whether the plaintiffs were entitled to a hearing under the rule of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970). In Goldberg, the question was whether certain individuals were eligible for welfare benefits and there were factual disputes over their eligibility. Here there are no disputed facts. The statute provides that the state may advance welfare payments and, if it does so, that it shall recoup them over a six-month period. Hearings would be necessary only if the state allowed exceptions to this rule and the plaintiffs wished to prove that they were within the excepted class. The statute permits no such exceptions.
 On the merits, I think the New York statute a valid exercise of the state's power to make regulations governing the payment of welfare grants. Plaintiffs have argued that the New York statute is in conflict with 42 U.S.C. Sec. 1302 and particularly the HEW regulation, 45 C. F.R. Sec. 233.20(3) (ii), promulgated thereunder. However, these federal laws prescribe welfare eligibility requirements, while the New York statute is directed not at eligibility (which the state determines according to the applicable federal standards), but at the method of payment of concededly due welfare grants. Nothing in the governing federal statute bars the state from accelerating welfare payments in one month and then reducing subsequent monthly grants. To hold otherwise would mean that the state either would have to forego programs of the nature at issue in the instant case or would have to make double payment to welfare recipients who had mismanaged their grants. The first course would be inhumane; the second an improvident allocation of the state's limited resources. Neither is required by the federal law.
 I would reverse the judgment of the district court and direct that judgment be entered for the defendants and that the injunction be vacated.
 
 
 
 *
 Retired Associate Justice of the Supreme Court, sitting by designation
 
 
 **
 Of the District Court for the Southern District of New York. Sitting by designation
 
 
 [1]
 The regulation in question, cited by the parties and the court below as 18 N.Y. C.R.R. Sec. 352.7(g) (6) was renumbered 18 N.Y.C.R.R. Sec. 352.7(g) (7) effective December 10, 1971. Sec. 352.7(g) (7) provides in pertinent part:
 "For a recipient of public assistance who is being evicted for nonpayment of rent for which a grant has been previously issued, an advance allowance may be provided to prevent such eviction or rehouse the family; and such advance shall be deducted from subsequent grants in equal amounts over not more than the next six months."
 
 
 [2]
 Cynthia Hagans paid $200 a month for her apartment while receiving $165 a month for rent. She was simply unable to make up the $35 a month difference with money allocated for other needs. Bertha Grissett was unable to pay her rent after the proceeds of her check were stolen. She apparently has had her recoupment reimbursed. Kathryn Zaverzence and Karen Horneck expended their rent money for babysitters and transportation while looking for alternative housing. Eurleen Carson mistakenly believed that her rent was being paid directly to her landlord
 
 
 [3]
 Plaintiffs Hagans and Grissett neither requested nor received hearings. Mrs. Zaverzence received notice of hearing, but claims that the departmental representative refused to see her on the appointed date. Mrs. Horneck's request for a hearing was refused. It is not clear whether Mrs. Carson, who signed a consent to recoupment, received a hearing or not
 
 
 [4]
 For example, 45 C.F.R. Sec. 233.20(a) (3) (ii) (d) provides:
 "current payments of assistance will not be reduced because of prior overpayments unless the recipient has income or resources currently available in the amount by which the agency proposed to reduce payment." [emphasis supplied]