Claudia **FROST**, Individually and as the next friend of James Frost and Kristen Frost, minors, and as representatives of a class of all persons who are now or may in the future be entitled to receive survivors' benefits under the Social Security Act whose benefits have been or may be reduced without a prior hearing, Plaintiffs,

v.

Caspar **WEINBERGER**, as Secretary of the United States Department of Health, Education and Welfare, Defendant.

No. 73–C–1383.

United States District Court,
E. D. New York.

May 3, 1974.

Susan Savitt, Nassau County Law Services Committee, Inc., Hempstead, N. Y., Rene H. Reixach, Greater Upstate Law Project, Monroe County Legal Assistance Corp., Rochester, N. Y., for plaintiffs.

Edward John Boyd V, Acting U. S. Atty., E. D. N. Y., for defendant; Lloyd H. Baker, Asst. U. S. Atty., of counsel.

## DECISION AND ORDER

TRAVIA, District Judge.

The facts relevant to the legal issues presented to this court are not in dispute. Charles Frost, Jr., the husband of the plaintiff Claudia Frost and the father of the plaintiffs James and Kristen Frost, died on August 21, 1968, and was fully insured under the provisions of the Social Security Act, Title 42 U.S.C. § 414(a). In that same year, the plaintiffs began receiving survivors' benefits under the provisions of the Social Security Act.[1] By 1973 the payments being made under the award amounted to $159.30 per month for each of the named plaintiffs, i. e., an aggregate monthly benefit of $477.90 for the entire family.[2]

On February 15, 1973 the plaintiffs were notified by letter that their monthly benefits were to be reduced by $63.-60 per person, or a total reduction of $190.80 per month for the family. The basis for the downward adjustment in benefits was stated to be because the Social Security Administration had determined that the insured decedent, Charles Frost, Jr., had fathered two illegitimate children, Charles E. and Tina L. Frost (hereinafter referred to as the "claimants"), who had also applied for and were now entitled to receive survivors'

---

1. Title 42 U.S.C. §§ 402(b)(1)(B), 402(b)(2), 402(g)(1) and 402(d)(1), (2).

2. Plaintiff, Claudia Frost, also receives $121 per month plus food stamps and medicaid as the grantee for her two-year old daughter, Kimberly Frost, who is not eligible for Social Security benefits.

benefits.[3] Reduction of the plaintiffs' benefits was deemed necessary by virtue of the maximum total benefits limitation provided in Title 42 U.S.C. § 403(a).[4] It is alleged that upon inquiring into the matter, plaintiff, Claudia Frost, was orally advised that in order to contest the Social Security Administration's decision, she would have to file a written request for reconsideration and submit evidence which would rebut either claimants' allegations or the administrative determination.[5] Plaintiff, Claudia Frost, then filed the requisite forms for reconsideration at the local office of the Social Security Administration in Freeport, New York, on behalf of herself and her children. Plaintiff, Claudia Frost, alleges that she repeatedly requested an opportunity to examine the evidence which had formed the premise for the administrative determination, but that her requests were all denied. She asserts that as a result she was unable to present sufficient evidence to rebut the claimants' assertions and could only categorically deny the claim that her husband had sired the two claimants.

In May 1973 the plaintiffs received a letter of "reconsideration determination," informing them that the Social Security Administration had deemed the original determination, which found the two claimants entitled to benefits under Section 216(h)(3) of the Social Security Act, to have been correct in all respects. Thereafter, commencing with the May 1973 survivors' benefits payment and continuing until the present date, plaintiffs have only received their benefits at the reduced level of payment.

In October 1973, plaintiff, Claudia Frost, commenced the instant action, on behalf of herself, her two infant children, as well as on behalf of all persons similarly situated, against the defendant, who is statutorily charged with the administration of the provisions of the Social Security Act and who is empowered to make rules and regulations and to establish procedures for determining benefit rights under the Act. Title 42 U.S.C. § 405(a) and (b).

The plaintiffs demand the following relief:

(1) A declaratory judgment that the reduction of benefits to the plaintiffs and the members of the class represented by them prior to a hearing violates their rights to the due process of law guaranteed by the Fifth Amendment to the Constitution of the United States.

(2) A declaratory judgment establishing the minimum standards for any hearing required to be given prior to any reduction of benefits to the plaintiffs and the members of the class represented by them, including but not limited to:

(a) prior notice in writing of the initial determination of the right to request a pre-reduction hearing, of how to obtain such a hearing, of the right to be represented by counsel at such hearing, of the right to confront and cross-examine witnesses, and of the right to examine documents and records to be used at such hearing at a reasonable time prior to and during such hearing.

---

3. The reduction was said to be in compliance with the United States Supreme Court decision in Richardson v. Griffin, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972), which found that it was an invidious form of discrimination to deny illegitimate children, who are otherwise qualified, the right to equally partake in the distribution of Social Security benefits with their legitimate siblings.

4. Since a family maximum is provided for under the Social Security Act and the benefits distributed subsequent to the *Richardson* decision had to be reapportioned equally among children of the wage earner, regardless of a child's legitimacy, legitimate children who had previously collected the entire benefit would have to suffer a downward adjustment in their benefits to accommodate the newly eligible children.

5. Although it is not clear from the pleadings, it would seem that the "protest" stage of the Social Security Administration's procedure was by-passed, or what was termed "reconsideration" was in actuality a "protest" under Section T 310 of the Social Security Administration's Claim Manual.

(b) The deferral of the effective date of any reduction pending the decision in such hearing.

(3) A mandatory permanent injunction ordering defendant, his successors in office, agents and employees, to establish the mechanism for providing such hearings, for the plaintiffs and the members of the class represented by them.

(4) A permanent injunction prohibiting defendant, his successors in office, agents and employees from reducing benefits to the plaintiffs and the members of the class represented by them without such a prior hearing.

(5) A preliminary injunction prohibiting defendant, his successors in office, agents and employees from reducing benefits to the plaintiffs and the members of the class represented by them without such a prior hearing.

(6) A temporary restraining order requiring that pending a hearing as requested herein defendant restore the benefits of the named plaintiffs to the levels to which they would be entitled but for the reduction herein alleged and a temporary restraining order, preliminary injunction and/or permanent injunction requiring that defendant restore to the named plaintiffs all sums by which the benefits of the named plaintiffs have been reduced without a hearing.

(7) A determination that this action be maintained as a class action and that the declaratory and injunctive relief ordered apply to all members of the class.

On November 2, 1973 the plaintiffs made application to this court for the issuance of a temporary restraining order and a preliminary injunction, directing the defendant to restore plaintiffs' survivors' benefits to the pre-reduction level. This court, by an order signed November 12, 1973, denied the plaintiffs' motion without prejudice to a renewal, if the defendant failed to hold an administrative hearing on the matter within one month. Pursuant to this court's order, a hearing was held on November 27, 1973 by the Social Security Administration, as will be referred to herein.

Subsequently, the plaintiffs made a motion, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, seeking leave of this court to maintain their lawsuit as a class action. Oral argument on the application was heard on December 8, 1973. On that date, the parties indicated their desire to submit motions for summary judgment. Accordingly, the attorneys orally agreed that decision on the class action motion should be held in abeyance pending the resolution of the litigants' respective motions for summary judgment. On February 26, 1974 in addition to filing a motion for summary judgment the plaintiffs also renewed their previous application for a preliminary injunction. Oral argument was heard on all of the unresolved motions on March 8, 1974, at which time it was brought to the court's attention that an administrative determination had been rendered by an Administrative Law Judge on the underlying factual merits of the claimants' eligibility to share in the plaintiffs' benefits. As a result, this court granted the litigants two-weeks to submit additional papers and memoranda, commenting on the impact of the administrative ruling upon the instant action.

## MAINTENANCE OF A CLASS ACTION

Rule 23 of the Federal Rules of Civil Procedure provides the applicable standards for determining whether a suit can be maintained as a class action. As a prerequisite to the declaration of any lawsuit as a class action, a plaintiff must demonstrate that:

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

The spirit of Rule 23 calls for a liberal rather than a restrictive reading of the statutory language. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968). Indeed, it has been opined that "if there is to be an error made, let it be in favor and not against the maintenance of the class action." Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir.), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1968).

The defendant's opposition to the plaintiffs' right to maintain this lawsuit as a class action is grounded upon the plaintiffs' alleged failure to comply with the "typicality" requirement of Rule 23(a)(3). More specifically, the defendant asserts that by the very nature of the case, the interests of approximately one-half of the members, i. e., the illegitimate children, are diametrically opposed to the interests of the plaintiffs, who purport to represent the class. In support of this contention, the defendant cites the rule that:

> "[I]f the class members themselves have conflicting rights in the subject matter of the litigation so that their respective priorities among the class members must be determined in the action, then claims of a right to represent the class often will be found to be improper." 7 Wright & Miller, Federal Practice and Procedure § 1768, at 647.

Upon cюser scrutiny, however, the defendant's argument must be rejected. The rule defendant relies upon is subject to one important caveat, namely, that the antagonism among the class members "must be as to the subject matter of the suit." 3B J.Moore, Federal Practice ¶ 23.07 [3], at 23–104. Any antagonism of interests which might exist here relates solely to the ultimate apportionment of the survivors' benefits between the claimants and the plaintiffs.[6] This is an issue not properly before this court and it is wholly peripheral to the central issue which is presented in this case, i. e., whether a recipient of survivors' benefits is entitled to a pre-reduction evidentiary hearing. Inasmuch as both the plaintiffs and the claimants would stand to benefit from a requirement that the Social Security Administration provide a due process hearing prior to any downward adjustment in a recipient's benefits, this court is unable to discern any conflict of interests between the claimants and the plaintiffs. By supposition, if at a future time the Social Security Administration were to determine that other children were also the progeny of the deceased insured, then the claimants herein would have an interest coextensive with that of the plaintiffs in demanding that an evidentiary hearing be afforded to them before any readjustment in benefits takes place.

Moreover, it is arguable that the claimants are really not in fact members of the class which the plaintiffs seek to represent. Plaintiffs only purport to represent those recipients of survivors' benefits who have had a downward adjustment in benefits without being afforded a pre-reduction evidentiary hearing. The claimants clearly have not suffered such a deprivation and cannot be considered as coming within the parameters of the class.

As to the other prerequisites enumerated in Rule 23(a), suffice it to say that the plaintiffs have adequately demonstrated the requisite numerosity, that a common question of law exists[7] and that they, as representatives, will fairly and adequately protect the interests of their fellow class members. Similarly, the plaintiffs' case falls squarely under Rule 23(b)(2):

> "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby

---

6. Even this purported antagonism has been obviated by the Administrative Law Judge's ruling that the claimants are in fact the children of the wage earner.

7. *See* Escalera v. New York City Housing Auth., 425 F.2d 853, 867 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

See 3B J.Moore, Federal Practice § 23.-40, at 23–653 n. 19 (Supplement 1972).

## MOOTNESS AND STANDING

■ The defendant strenuously maintains that because the Social Security Administration has granted the plaintiffs an evidentiary hearing on the merits of their underlying claim, their case has now been rendered moot. This court disagrees. It has long been held in this circuit,[8] as well as elsewhere,[9] that the mootness of an individual plaintiff's claim will not necessarily render the class action moot. Rather, the touchstone for determining mootness is the likelihood that the behavior complained of will not recur.[10] When the question of mootness arises, the burden shifts to the defendant to "demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); Torres v. New York State Dep't of Labor, supra, 318 F.Supp. at 1316.

■ With this criterion in mind, compelling reasons exist for the conclusion that the present class action should not be dismissed on the ground of mootness. The defendant, rather than showing that other recipients of survivors' benefits will be accorded different treatment in futuro, has steadfastly clung to the correctness of his position that the administrative procedures currently in force are in total compliance with the requirements of due process. There are numerous recipients who are members of the class who have already had their award of benefits reduced without a hearing or who are still subject to the same administrative treatment. Certainly, as to these recipients the action remains a viable one. See Johnson v. New York State Ed. Dep't, supra, 409 U.S. at 76 (1972) (Marshall, J., concurring). If the rule were otherwise, a defendant might easily circumvent the judicial resolution of an important constitutional issue simply by settling the individual case of the representative plaintiff. Fortunately, the courts will not permit a defendant to use the doctrine of mootness as a vehicle to evade the resolution of key constitutional questions. Davis v. Caldwell, 53 F.R.D. 373, 376 (N.D.Ga.1971); Torres v. New York State Dep't of Labor, supra, 318 F.Supp. at 1317–1318; Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968), aff'd sub nom. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ Similarly, it is not a valid argument to claim that because the plaintiffs have received a post-reduction hearing, they are no longer members or proper representatives of the class. From its inception, this lawsuit has been denominated as a class action, and there is a presumption that class action status exists despite the fact that no formal declaration to that effect has been made by this court. See 3B J.Moore, Federal

---

8. See, e. g., Steinberg v. Fusari, 364 F.Supp. 922, 928 (D.Conn.1973); Torres v. New York State Dep't of Labor, 318 F.Supp. 1313 (S.D.N.Y.1970); Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968), aff'd sub nom. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Gatling v. Butler, 52 F.R.D. 389 (D.Conn.1971).

9. See, e. g., Jenkins v. United Gas Corp., 400 F.2d 28, 33 (5th Cir. 1968); Cypress v. Newport News General & Nonsect. Hosp. Ass'n, 375 F.2d 648, 657–658 (4th Cir. 1967); Knowles v. Butz, 358 F.Supp. 228 (N.D.Cal.1973); Thomas v. Clarke, 54 F.R.

D. 245, 252 (D.Minn.1971); Crow v. California Dep't of Human Resources Development, 325 F.Supp. 1314 (N.D.Cal.1970); Vaughan v. Bower, 313 F.Supp. 37, 40 (D. Ariz.), aff'd 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970).

10. Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); see Johnson v. New York State Ed. Dep't, 409 U.S. 75, 76, 93 S.Ct. 259, 34 L.Ed.2d 290 (1972) (Marshall, J., concurring); Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

Practice ¶ 23.50, at 23–1103; Gaddis v. Wyman, 304 F.Supp. 713, 715 (S.D.N.Y. 1969); *see also* C.A.Wright, Class Actions, 47 F.R.D. 169, 182 (1970). Since the plaintiffs were proper members of the purported class at the commencement of this action, any subsequent mooting of their individual claims will not affect their right or ability to continue litigating the case on behalf of the class. *See, e. g.*, Thomas v. Clarke, 54 F.R.D. 245, 252 (D.Minn.1971); Gatling v. Butler, *supra*, 52 F.R.D. at 395.

The case of Torres v. New York State Dep't of Labor, *supra*, is in point and would seem to be dispositive. In that case the same argument of mootness was raised and the court found it to be unpersuasive for a number of reasons. Firstly, the representative plaintiff therein, as here, was never afforded the type of hearing which the class had demanded; instead of a pre-termination hearing, plaintiff was given a post-termination hearing. Thus, the court concluded that:

> "In a sense, Torres' status as of the time he brought this action could never be changed and could lead neither to mootness nor to his being unrepresentative. Giving Torres a hearing following the termination of his benefits cannot alter the fact that he was declared ineligible and deprived of . . . benefits before he was given a hearing. Thus, his status as a rep-

resentative of others who are subjected to a pre-hearing termination has not changed." 318 F.Supp. at 1317. Secondly, the court in *Torres* found that there has been a long standing judicial policy of not permitting technical rules of representation to bar the adjudication of substantial questions of constitutional law. *Id.*, *citing* Smith v. Board of Ed., 365 F.2d 770, 776 (8th Cir. 1966) and Kelly v. Wyman, *supra*, 294 F.Supp. at 890.

Defendant cites a number of judicial decisions to support his claim that the present action has been mooted. Most of the opinions relied upon by the defendant are clearly not applicable to the facts of the present case; many of these cases either deal with a representative plaintiff who had not been a proper member of the class at the initiation of the lawsuit or the actions themselves were not brought as class actions.[11]

## JURISDICTION

Before turning to the constitutional claim raised by the plaintiffs, it would seem appropriate at this juncture to comment briefly upon this court's jurisdiction to entertain the present action. This court possesses the requisite jurisdiction to hear and determine all of the issues presented in this case under the multiple jurisdictional predicates of Title 28 U.S.C. §§ 1331,[12] 1361 [13] and Title 5 U.S.C. § 701 *et seq.*[14]

---

11. Worthy of discussion is Lindsay v. Richardson, 357 F.Supp. 203 (W.D.N.C.1973), wherein the court dismissed a class action for the recoupment of Social Security benefits. Defendant has, however, misconstrued *Lindsay* as standing for the proposition that a class action, contesting the constitutionality of reduction procedures, is rendered moot when the representative plaintiff receives a subsequent administrative hearing. Actually, the court deemed the action moot because of the intervening adoption by the Social Security Administration of new regulations during the pendency of the lawsuit. The court assumed that these new regulations would be compatible with the requirements of due process and that the class action was no longer viable "because its purpose [had] now [been] accomplished." *Id.*

at 205. Moreover, the reliability of the *Lindsay* opinion is questionable in light of the fact that the court failed to cite any judicial precedent which would be supportive of its conclusion.

12. *See* Cortright v. Resor, 325 F.Supp. 797, 809 (E.D.N.Y.1971), rev'd on other grounds, 447 F.2d 245 (2d Cir. 1971).

13. *See* Elliot v. Weinberger, 371 F.Supp. 960 (D.Haw.1974); Martinez v. Richardson, 472 F.2d 1121 (10th Cir. 1973); Mead v. Parker, 464 F.2d 1108 (9th Cir. 1972).

14. Mills v. Richardson, 464 F.2d 995, 1001 n. 9 (2d Cir. 1972); Citizens Comm. for Hudson Valley v. Volpe, 425 F.2d 97 (2d Cir. 1970); Bass v. Richardson, 338 F.Supp. 478, 482 (S.D.N.Y.1971).

The defendant contests the court's jurisdiction to entertain this action because of the plaintiffs' alleged failure to exhaust their administrative remedies. Such an argument is fundamentally without merit. Although the general rule requires the exhaustion of administrative remedies before the initiation of an action in the federal courts, *see* Meyers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938), the courts have carved out two major exceptions to this rule: (1) when the administrative remedy is wholly inadequate and a federal question is plainly presented or (2) where the delay in attempting to exhaust administrative remedies would be prejudicial and cause irreparable injury. Martinez v. Richardson, 472 F.2d 1121, 1125 (10th Cir.); *see* Smith v. Illinois Bell Tel. Co., 270 U.S. 587, 591–592, 46 S.Ct. 408, 70 L.Ed. 747 (1926); Note, *Federal Jurisdiction Over Challenges to State Welfare Programs*, 72 COL.L.REV. 1404, 1438–1440 (1972). The instant action falls within the first exception. Since an Administrative Law Judge is precluded from passing upon the constitutionality of the very procedures he is called upon to administer, the administrative procedures are totally inadequate to resolve the plaintiffs' constitutional challenge. *See, e. g.,* Morris v. Richardson, 346 F.Supp. 494 (N.D.Ga.1972); Gainville v. Richardson, 319 F.Supp. 16 (D.Mass.1970). It would be an effort in futility to require the plaintiffs to exhaust the very administrative procedures which they now seek to overturn. *See, e. g.,* Jeffries v. Swank, 337 F.Supp. 1062, 1066 (N.D.Ill.1971); *cf.* Boone v. Wyman, 295 F.Supp. 1143, 1151 (S.D.N.Y.), aff'd 412 F.2d 857 (2d Cir. 1969), cert. denied, 396 U.S. 1024, 90 S.Ct. 600, 24 L.Ed.2d 518 (1970).

The plaintiffs have already received an administrative hearing by the Social Security Administration and any administrative appellate review would be limited to only the factual determinations made by the Administrative Law Judge.[15] Thus, nothing would be accomplished by forcing the plaintiffs to pursue and exhaust their administrative remedies prior to the maintenance of this action, since the constitutional issue sought to be litigated herein would still remain unresolved.

## THE CONSTITUTIONAL CLAIM

The primary issue which is sought to be adjudicated herein is whether the Social Security Administration can constitutionally make a downward adjustment, albeit for a legitimate and philoprogenitive purpose, in the amount being paid under an existing award of survivors' benefits without affording the adversely affected recipient an opportunity to contest the reduction at a pre-reduction evidentiary hearing. The plaintiffs contend that the administrative procedures currently being employed by the Social Security Administration are generally violative of the Due Process Clause of the Fifth Amendment and are, more particularly, not in compliance with the Supreme Court's mandate in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

As previously noted, the downward adjustment of the plaintiffs' survivors' benefits arose as a consequence of the Supreme Court's decision in Richardson v. Griffin, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972), affirming 346 F.Supp. 1226 (D.Md.1972), which removed the arbitrary distinction that had previously been drawn between legitimate and illegitimate children with respect to eligibility for Social Security benefits. Although a reapportionment of existing awards is necessary in certain instances to effectuate the dictates of the *Richardson* decision,[16] the Court laid down no explicit guidelines for ad-

15. It was the Administrative Law Judge's finding that Charles E. and Tina L. Frost were in fact children of the decedent wage earner within the meaning of Section 216(h)(3) of the Social Security Act.

16. The downward adjustment of benefits is only necessary where the existing beneficiaries are receiving the family maximum prior to the time of readjustment. *See* note 4 *supra.*

ministrative authorities to follow in properly implementing its holding. The *Richardson* opinion should not be interpreted as a *carte blanche* grant of authority to the Social Security Administration to carry out the necessary redistribution of benefits in a manner which would contravene the requirements of procedural due process. It can safely be assumed that it was not the Supreme Court's intent to correct one existing deprivation and in the process create yet another egregious inequity by encroaching upon the procedural due process rights of other individuals. Therefore, the *Richardson* decision cannot be used as a remedial cure or a means to legitimize a denial of due process rights.

 Initially it should be observed that once entitlement to survivors' benefits has been found to have vested in an individual, his interest in the continuation of such benefits is not merely a "privilege," but is a matter of statutory "right." *See* Anderson v. Richardson, 454 F.2d 596, 599 (6th Cir. 1972); *cf.* Goldberg v. Kelly, *supra,* 397 U.S. at 262. Although this "right" is far from absolute, it can only be disturbed through an adjudicatory process which comports with minimal standards of procedural due process.

 Concededly, due process is not an inflexible rubric and the procedural protections demanded by it will vary according to the factual circumstances of a particular case and the nature of the right sought to be adjudicated. *See* Goldberg v. Kelly, *supra,* 397 U.S. at 262–263. It is well established, however, that where "important rights" are at stake, due process at a minimum requires an opportunity to be heard, Grannis v. Ordean, 234 U.S. 385, 394, 34 S. Ct. 779, 58 L.Ed. 1363 (1914), "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U. S. 545, 552, 85 S.Ct. 1187, 1191, 14 L. Ed.2d 62 (1965).

In attempting to ascertain whether the administrative procedures challenged herein are in fact constitutionally infirm, this court should use as a basis of comparison the landmark decision in Goldberg v. Kelly, *supra,* to gain instructive insight. In *Goldberg,* the Supreme Court held, *inter alia,* that a welfare recipient's right to the continuation of public assistance could not be cut off without affording him an opportunity to contest the deprivation at a pre-termination evidentiary hearing. The Court determined that only a pre-termination evidentiary hearing would satisfy the requisites of procedural due process in the context of welfare benefits. 397 U.S. at 264. In reaching this result the Court noted that the sole purpose for requiring a pre-termination, in contradistinction to a post-termination, hearing was to:

> "produce an initial determination of the validity of the . . . department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." 397 U.S. at 267.

This same purpose was reiterated in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), wherein the Court also articulated the underlying rationale for making a prior hearing obligatory:

> "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. 'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.'" *Id.* at 81–82. (Citations omitted).

By its very nature, post-deprivation adjudication is substantially ineffectual and constitutionally deficient. Its fatal

shortcoming springs from its remedial, rather than preventative, character. Its procedural machinery can only be set into motion after the act of deprivation has taken place. Thus, it fails to provide the recipient with adequate protection at the critical moment when deprivation occurs.

The inadequacy of post-deprivation adjudication to safeguard the rights of a recipient assumes an even more dangerous dimension when the recipient is destitute and, therefore, totally or in great part dependent upon his benefits to maintain his existence. To the indigent recipient even a partial or temporary deprivation of benefits can be financially disasterous. Inasmuch as the aggrieved recipient's economic plight becomes acutely desperate, he can gain little succor from the knowledge that he might ultimately recoup the amounts which are being erroneously withheld.

The boundaries of due process protection are always coextensive with the gravity of the interest sought to be adjudicated and "the extent to which [the recipient is] condemned to suffer grievous loss." 397 U.S. at 262–263. Thus, the Court in *Goldberg* gave considerable weight to the "brutal need" of the welfare recipient in determining whether a full evidentiary hearing should be required.[17]

"Thus, the crucial factor in this context . . . is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy." 397 U.S. at 264. (Footnotes omitted).

In this court's opinion, the impact of withholding benefits is no less debilitating to the recipient of survivors' benefits. The avowed purpose for enacting survivors' benefits legislation was to protect the dependents of insureds who had been deprived of the means of support by the death of a wage earner. Thus, Congress recognized a "brutal need" on the part of these dependents and sought to ameliorate their financial predicament through remedial legislation. The recipient's reliance upon his payments is also substantiated by a recent Social Security Administration study, which reported that two-thirds of all beneficiaries receiving survivors' benefits depend upon their monthly payments as "the major source of income." E. Palmore, G. Stanley & R. Cormier, Widows with Children under Social Security 15 (1966). Illustrative of the recipient's "brutal need" is the precarious financial situation of the representative plaintiffs herein. The administrative cut of forty percent has lowered the plaintiffs' annual benefits award to $3,445.20, an amount only marginally above the level set in 1971 as the "average poverty threshold for nonfarm families." *See* Social Security Bulletin, Annual Statistical Supplement 1971, Table 7 at 31. It is because of this reduction that the plaintiffs now complain that they are unable to purchase the necessities of life and that their debts are rapidly accumulating.

The mere fact that entitlement to welfare benefits is predicated upon a "need" basis and eligibility for survivors' benefits is not, does not mean that the recipients of the latter are not, in fact, financially in need. Moreover, the Court in *Goldberg* spoke in broad terms of economic need and its holding should not be narrowly confined to only those situations where need is a prerequisite to eligibility. *See* Anderson v. Richardson, supra, 454 F.2d at 600; *see also*

---

17. In *Goldberg*, the Court employed a "balancing test" to determine the due process requirements in the context of welfare benefits. The Court weighed the interest of the Government in summary adjudication against the countervailing interest of the recipient in retaining his benefits.

Fuentes v. Shevin, supra at 88–90; Pregent v. New Hampshire Dep't of Employment Sec., 361 F.Supp. 782, 791 (D. N.H.1973); Eldridge v. Weinberger, 361 F.Supp. 520, 523–524 (W.D.Va.1973).

Even assuming *arguendo* that the requisite "brutal need" is not present here, judicial opinions subsequent to *Goldberg* have dispelled any thought that only "necessary property" comes within the purview of procedural due process protection. *See, e. g.,* Fuentes v. Shevin, *supra,* 407 U.S. at 88–90. With the "brutal need" test finally laid to rest, the only proper criterion for determining whether a prior hearing is indispensable in a given context, rests upon a consideration of whether the interest sought to be adjudicated is deemed to be "important," as distinguished from *"de minimus." See, e. g.,* Bell v. Burson, 402 U.S. 535, 539 (1971). The interest presently in question clearly falls within the former category. The right to the continuation of survivors' benefits reaches at least the same level of significance as other interests which have been declared to be "important" under judicial standards. *See, e. g.,* Fuentes v. Shevin, *supra;* Bell v. Burson, *supra.* Once an interest can be categorized as "important," pre-deprivation adjudication is always required. The *form* that the pre-deprivation hearing is to assume, however, will fluctuate according to the level of importance or relative weight of the interest involved. *See* Fuentes v. Shevin, *supra,* 407 U.S. at 82. It is only in determining the form of the hearing that the "brutal need" of a recipient becomes germane. *Id.*

Undoubtedly, there are occasions when a hearing may legitimately be held after the act of deprivation has taken place. *See,* Goldberg v. Kelly, *supra,* 397 U.S. at 264. These instances, however, have been judicially limited to only a few unusual or "extraordinary situations," *see* Fuentes v. Shevin, *supra,* 407 U.S. at 90–91, where the Government's concern for summary adjudication will override the individual's interest in retaining the property. Defendant argues that to re-quire the Social Security Administration to provide a pre-reduction evidentiary hearing in cases such as this would create an unwarranted burden upon the public fisc and upon administrative resources. But this argument has already been rejected by the Supreme Court in both *Goldberg* and *Fuentes.*

"A prior hearing always imposes some costs in time, effort, and expense, and it is often more efficient to dispense with the opportunity for such a hearing. But these rather ordinary costs cannot outweigh the constitutional right.

. . . Procedural due process is not intended to promote efficiency or accommodate all possible interests: it is intended to protect the particular interests of the person whose possessions are about to be taken." Fuentes v. Shevin, supra, 407 U.S. at 90 n. 22. (Citations omitted).

*See also* City of New York v. Richardson, 473 F.2d 923, 932 (2d Cir. 1973); Eldridge v. Weinberger, *supra,* 361 F. Supp. at 527.

 It is also the defendant's contention that the presently existing procedures used by the Social Security Administration in making downward adjustments in survivors' benefits are more than adequate to satisfy the demands of procedural due process. More specifically, the defendant maintains that the existing procedures afford a recipient with an opportunity to rebut the administrative determination at a meaningful time before the reduction becomes operative. Under Section T 312 of the Social Security Administration's Claims Manual, a recipient is permitted to file a written "protest" within a forty-five day period following notification of the Social Security Administration's intent to make a downward adjustment in benefits. If a "protest" is submitted within that period and prior to the adjustment date and the protest is accompanied by sufficient documentary evidence to cast doubt on the initial administrative determination, then reduction of benefits will be post-

poned. Although this procedure provides a form of "paper" hearing prior to any act of governmental deprivation, it still falls short of the constitutional standards demanded by procedural due process.[18]

▉ Admittedly, "due process tolerates variances in the *form* of a hearing 'appropriate to the nature of the case' . . . 'and depending upon the importance of the interests involved.' " Fuentes v. Shevin, *supra,* 407 U.S. at 83, *quoting* Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). But it is beyond cavil that whenever the pivotal factor in deciding a case turns upon a question of fact, procedural due process requires an opportunity to confront and cross-examine adverse witnesses at a time prior to actual deprivation. *See* Goldberg v. Kelly, *supra,* 397 U.S. at 269.

" 'Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. \* \* \* This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, \* \* \* but also in all types of cases where administrative \* \* \* actions were under scrutiny.' " Id. at 270, quoting Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1950).

One case decided by the Second Circuit has gone so far as to limit the *Goldberg* doctrine's applicability to only situations where a factual determination is involved. Mills v. Richardson, 464 F.2d 995, 1001 (2d Cir. 1972).[19]

▉ In deciding whether the claimants are entitled to share equally in the distribution of survivors' benefits with their legitimate siblings, the Social Security Administration must first, perforce, determine whether the claimants are in fact the off-springs of the deceased insured. This is a factual question which should only be resolved after a pre-reduction evidentiary hearing where the plaintiffs are given a full opportunity to rebut the claimants' evidence and impeach the latters' credibility.[20] Without the opportunity to confront and cross-examine witnesses

18. Since the focus of the plaintiffs' constitutional challenge centers upon the Social Security Administration's failure to provide constitutionally adequate pre-reduction procedures, this court need not delve into secondary considerations of whether the post-reduction administrative procedures satisfy due process requirements. It is not enough that the Social Security Administration's post-reduction procedures are valid under due process. The critical time when procedural protection is most sorely needed occurs prior to and not after the act of deprivation.

19. The defendant's reliance upon Mills v. Richardson, 464 F.2d 995 (2d Cir. 1972), for the holding that a hearing is not necessarily required before the termination or reduction of benefits, would seem to be misplaced. *Mills* dealt with the constitutionality of procedures used in the recoupment of overpayments, and unlike the case at bar, it did not involve any factual determinations.

20. It is of little consequence that the Administrative Law Judge ultimately held against the plaintiffs after a full post-reduction evidentiary hearing on the underlying merits of the case.
 " 'To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process would have led to the same result because he had no adequate defense upon the merits.' Coe v.

the decision maker is deprived of the ability to render an informed opinion based upon the total evidence in a case and the credibility of the various witnesses. More importantly, the recipient is denied an "opportunity to be heard in a meaningful manner."

Under the present procedures, the Social Security administration is permitted to make an initial *ex parte* determination of a factual issue even before any notification is sent to the recipient.

" '[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.' " Fuentes v. Shevin, supra, 407 U.S. at 81, *quoting* Joint Anti-Fascists Refugee Committee v. McGrath, 341 U.S. 123, 170–172, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

Although the aggrieved recipient is allowed to "protest" the administrative determination, his avenue of redress is severely constricted to the filing of written submissions. At best, the "protest" stage of the administrative process closely approximates the procedures which were specifically disapproved of by the Court in *Goldberg*.

"The city's procedures presently do not permit recipients to appear personally with or without counsel before the official who finally determines continued eligibility. Thus a recipient is not permitted to present evidence to that official orally, or to confront and cross-examine adverse witnesses. These omissions are fatal to the constitutional adequacy of the procedures.

. . . . Written submissions are an unrealistic option for most recipients, who lack the educational attainment necessary to write effectively and who cannot obtain professional assistance. Moreover, written submissions do not afford the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important. Particularly where credibility and veracity are at issue, as they must be in many termination proceedings, written submissions are a wholly unsatisfactory basis for decision." 397 U.S. at 268–269.

The "protest" stage, which is the only procedural safeguard afforded a recipient prior to the readjustment of benefits, does not rise to the level of a prior hearing and, consequently, the procedure is constitutionally deficient because it does not enable the recipient to test the factual or legal soundness of the administrative determination at an oral evidentiary hearing.

The hearing contemplated by *Goldberg* does not require all the procedural paraphernalia that is demanded in a full-blown judicial or quasi-judicial trial, but it does prescribe that certain safeguards must be extended to the recipient, including:

(1) a pre-reduction hearing, wherein the recipient is permitted to present oral argument;

(2) the right to confront and cross-examine adverse witnesses;

(3) the opportunity to retain and be represented by counsel; and

(4) an impartial decision maker who will render a comprehensive opinion on the matter in controversy.

Since its pronouncement, the courts have refrained from giving a "narrow

Armour Fertilizer Works, 237 U.S. 413, 424, [35 S.Ct. 625, 629, 59 L.Ed. 1027]. It is enough to invoke the procedural safeguards of the [Fifth] Amendment that a significant property interest is at stake, whatever the ultimate outcome of the hearing. . . ." Fuentes v. Shevin, 407 U.S. at 87.

reading" to the *Goldberg* doctrine, *see* Fuentes v. Shevin, *supra,* 407 U.S. at 88, and have liberally applied its tenets to a broad spectrum of areas.[21] The application of the *Goldberg* doctrine to the instant case seems unavoidable. This court cannot perceive of any significant reason why beneficiaries of survivors' benefits should not be entitled to the same constitutional protections that are currently being enjoyed by welfare recipients. The mere fact that the present action deals with an administrative reduction of benefits, while *Goldberg* involved an outright termination of benefits, is not a solid ground for distinguishing the two cases. Qualitatively, the deprivation in the instant case is just as compelling in a constitutional sense as it was in *Goldberg.* Once governmental deprivation of a significant interest is shown, the quantum of deprivation becomes immaterial. As a very recent federal court has aptly indicated:

> "Starvation may be slower if benefits are reduced or suspended rather than terminated as in *Goldberg,* but some recipients will suffer nonetheless." Elliott v. Weinberger, *supra,* 371 F. Supp. at 970.

*See* Hagans v. Wyman, 462 F.2d 928 (2d Cir. 1972); Hunt v. Edmunds, 328 F. Supp. 468, 475 (D.Minn.1971).

In reaching this conclusion, this court is not unmindful of the decision in Torres v. New York State Dep't of Labor, 321 F.Supp. 432 (S.D.N.Y.1971) (2–1 decision), vacated and remanded, 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133, 333 F.Supp. 341 (S.D.N.Y.1971) (2–1 decision), aff'd, 405 U.S. 949, 92

S.Ct. 1185, 31 L.Ed.2d 228 (1972). In *Torres,* the Supreme Court affirmed without opinion the holding of a three-judge court, which had refused to extend the *Goldberg* doctrine to cover the procedures for terminating unemployment compensation in New York State. The court's decision is, however, inapposite to the facts of the present action for a number of reasons. Firstly, the plaintiff's unemployment compensation was only terminated after he had received a hearing which was identical to the hearing that had been used initially to determine his eligibility for unemployment compensation. Thus, the plaintiff, in effect, received a pre-termination hearing. Secondly, the court's opinion was rendered prior to the Supreme Court's holding in *Fuentes,* and it reflected a restrictive approach in the application of the *Goldberg* doctrine to other areas. It was the court's belief that the *Goldberg* formula should only be invoked where a "brutal need" was presented. As noted before, this narrow reading of *Goldberg* has been explicitly discarded by subsequent decisions of the Supreme Court. *See* Fuentes v. Shevin, *supra;* Bell v. Burson, *supra; see also* Steinberg v. Fusari, *supra;* Pregent v. New Hampshire Dep't of Employment Sec., *supra.*

## THE MOTION FOR INJUNCTIVE RELIEF

■ Although this court is disposed in favor of granting the plaintiffs' motion for summary judgment, requiring the Social Security Administration to provide an evidentiary hearing before it can reduce survivors' benefits, it does

21. Perry v. Sindermann, 408 U.S. 593, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972) [rights of a tenured teacher]; Fuentes v. Shevin, 407 U.S. 67, 84–85, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) [replevin of consumer goods]; Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) [suspension of an automobile and operator's license]; Wheeler v. Montgomery, 397 U.S. 280, 90 S. Ct. 1026, 25 L.Ed.2d 307 (1970) [suspension of old age benefits]; Hernandez v. European Auto Collision, Inc., 487 F.2d 378 (2d Cir. 1973) [garageman's lien]; Elliott v. Weinberger, 371 F.Supp. 960 [overpayments of Social Security payments]; Eldridge v. Weinberger, 361 F.Supp. 520 (W.D.Va.1973) [disability benefits]; Hunt v. Edmunds, 328 F. Supp. 468 (D.Minn.1971) [reduction in family welfare benefits].

not necessarily follow that the representative plaintiffs herein are also entitled to injunctive relief. The individual plaintiffs have been given a due process hearing by the Social Security Administration and have argued the underlying merits of their case, i. e., whether the claimants are in fact the progeny of the insured wage earner. Therefore, the need for injunctive relief is obviated by the fact that nothing remains left for the individual plaintiffs to adjudicate. Although other members of the plaintiffs' class still have a viable claim for injunctive relief, the representative plaintiffs no longer have a personal stake in the outcome of the decision rendered by this court. By necessity, the plaintiffs' application for injunctive relief must be denied.

Accordingly, it is

Ordered that the plaintiffs' motion for the declaration of this lawsuit to be a class action be and the same is hereby granted; and it is further

Ordered that the plaintiffs' application for injunctive relief, both permanent and temporary, be and the same is hereby denied, and it is further

Ordered that the defendant's motion for summary judgment dismissing the plaintiffs' complaint be and the same is hereby denied; and it is further

Ordered that the plaintiffs' motion for summary judgment declaring the existing procedures of the Social Security Administration to be violative of procedural due process in their failure to afford recipients of survivors' benefits with a pre-reduction oral evidentiary hearing be and the same is hereby granted; and it is further

Ordered that the defendant adopt new procedures which conform to the dictates of the judgment herein as soon as practically convenient.

Submit order in accordance with the terms of this decision and order.